In the Matter of the Application of COLERIDGE A. HART, Appellant, for an Order Requiring the STATE BOARD OF CANVASSERS, Respondents, to Act or Show Cause.

1. MANDAMUS — DISCRETIONARY REFUSAL OF WRIT NOT REVIEWABLE IN COURT OF APPEALS. Where the order of the Special Term refusing a writ of mandamus does not state the ground of refusal, and the facts would have justified a refusal as matter of discretion, the refusal is not reviewable in the Court of Appeals, even though the order of the Appellate Division, affirming the order of refusal, expressly bases its determination not upon discretion but upon the questions of law involved.

2. REFUSAL OF MANDAMUS TO CANVASSING BOARD WHEN RELATOR SEEKS DETERMINATION OF TITLE TO OFFICE IN PROCEEDING TO WHICH INCUMBENT IS NOT A PARTY. When it appears that, by an application for a mandamus to a canvassing board, the relator seeks a determination that he has been elected to an office that is in the possession of another, claiming title thereto, who is not a party to the proceeding, a case is presented in which the court would be justified in refusing the writ as matter of discretion, leaving the relator to his remedy in the action provided by law for the determination of the title to an office.

*Matter of Hart*, 35 App. Div. 625, affirmed.

(Argued April 19, 1899; decided June 6, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 24, 1899, affirming an order of the Special Term denying an application for a mandamus requiring the state board of canvassers to determine and declare what person, by the greatest number of votes, was duly elected justice of the Supreme Court in and for the second judicial district at the election of 1897 to fill vacancy in place of Calvin E. Pratt, deceased.

The facts, so far as material, are stated in the opinion.

*David B. Hill* and *F. C. Cantine* for appellant. The vacancy which existed by reason of the death of Justice PRATT could only be filled at the general election of 1897. (L. 1892, ch. 677, § 27; *People* v. *Rathbone*, 145 N. Y. 434; *People ex rel.* v. *Wemple*, ̄125 N. Y. 490; *People ex rel.* v. *Angle*, 109 N. Y. 564; *Settle* v. *Van Evrea*, 49 N. Y. 280; *Early* v. *Doe*, 16 How. [U. S.] 616; *State* v. *Clark*, 21 Nev. 333; *Northrup* v. *Cooper*, 23 Kans. 438; *Roberts* v. *Wilcox*, 8 W. & S. [Penn.] 464; *People ex rel.* v. *Potter*, 47 N. Y. 381; *People* v. *Fancher*, 50 N. Y. 293.) The votes cast for the applicant " for Justice of the Supreme Court, to fill vacancy in place of Calvin E. Pratt, deceased," were valid and properly cast for the office. (Const. N. Y. art. 2, § 1; *People ex rel.* v. *Wood*, 148 N. Y. 146; *People ex rel.* v. *President, etc.*, 144 N. Y. 616; *People ex rel.* v. *Loomis*, 8 Wend. 396; *People ex rel.* v. *Seaman*, 5 Den. 409; *People ex rel.* v. *Ames*, 19 How. Pr. 551; *Montgomery* v. *O'Dell*, 67 Hun, 169; *People ex rel.* v. *Love*, 63 Barb. 535; *People ex rel.* v. *Bd. of Canvassers*, 11 Mich. 111; *People ex rel.* v. *Shaw*, 133 N. Y. 493.) It was the duty of the state board of canvassers to declare what person, having received the greatest number of votes for the Pratt vacancy, was elected thereby. And that duty should have been enforced by mandamus. (*People ex rel.* v. *Rice*, 129 N. Y. 465; *Clark* v. *McKenzie*, 7 Bush. 523; *Matter of Woods*, 5 Misc. Rep. 579; McCrary on Elections, §§ 318, 319, 374; *Matter of Strong*, 20 Pick. 484; *People ex rel.* v. *Love*, 63 Barb. 535; *Matter of Moore*, 4 Wyo. 98; *People ex rel.* v. *Crissey*, 91 N. Y. 616; *Ellis* v. *Comrs.*, 2 Gray, 370; *People ex rel.* v. *Hillard*, 29 Ill. 419.)

*Elihu Root* for respondents. The election on the 3d of November, 1896, did not happen less than three months after the vacancy occurred on the 3d of August, 1896. (*Grosvenor* v. *Magill*, 37 Ill. 239; *Aultman* v. *Syme*, 87 Hun, 295; *Marvin* v. *Marvin*, 75 N. Y. 240; *Louisville* v. *Savings Bank*, 104 U. S. 469; Const. N. Y. art. 10, § 5; Throop on Public Officers, § 308; Cooley on Const. Lim. 88; *People ex*

*rel.* v. *Palmer*, 21 App. Div. 101; 154 N. Y. 140; *Wright* v. *Adams*, 45 Tex. 134; *People ex rel.* v. *Potter*, 47 N. Y. 375; *Vandenburgh* v. *Van Rensselaer*, 6 Paige, 147; *Butler* v. *Fassendan*, 12 Cush. 78; *Presbrey* v. *Williams*, 15 Mass. 193.) Even assuming the relator's construction and application of article 6, section 4, of the Constitution, to be correct, he cannot have the relief he asks because there is no authority of law for any such canvass by the state board as the relator requires. (L. 1896, ch. 909, §§ 81, 105.) The relator is not entitled to the writ, because upon his own showing he has asked the aid of the court to perpetrate a monstrous injustice and set aside the plainly-expressed will of the People of the second department. (*People ex rel.* v. *Bd. of Canvassers*, 129 N. Y. 360; *People ex rel.* v. *Clute*, 50 N. Y. 451; *People ex rel.* v. *Cowles*, 13 N. Y. 350; *People ex rel.* v. *President, etc.*, 144 N. Y. 616.)

*John C. Davies, Attorney-General*, for respondents. No vacancy existed in the office of justice of the Supreme Court in the second judicial district at the time of the general election of 1897, and no candidate could be voted for thereat other than to fill the vacancy about to be caused by the expiration of the term of Mr. Justice BARTLETT on December 31, 1897. (*Louisville* v. *Sav. Bank*, 104 U. S. 469.) The five ballots cast for the appellant, which were marked "to fill vacancy in place of Calvin E. Pratt, deceased," were marked ballots, and were void, and should not have been canvassed. (L. 1896, ch. 909, § 105.) In any event a writ of mandamus should not be allowed to be issued against the respondents in this proceeding, for its only purpose could be to aid the appellant to carry out his scheme to place himself in the office of justice of the Supreme Court contrary to the expressed will of a vast majority of the electors of the second judicial district. (*People ex rel.* v. *State Board of Canvassers*, 129 N. Y. 360; *People ex rel.* v. *Rice*, 129 N. Y. 391.)

PARKER, Ch. J. Calvin E. Pratt, a justice of the Supreme Court in the second judicial district, whose term of office, had

he lived, would have expired on the 31st day of December, 1905, died between the hours of ten and eleven o'clock in the forenoon of August third, 1896. A few days thereafter, on August 11th, 1896, the governor made the temporary appointment of William W. Goodrich to fill the vacancy occasioned by the death of Mr. Justice PRATT. The general election of that year was held on the 3d day of November, 1896, and the record in the office of the secretary of state shows that, at such election, Garrett J. Garretson, Michael H. Hirschberg, Samuel T. Maddox and William W. Goodrich were elected justices of the Supreme Court in the second judicial district, and in the four vacancies certified to be filled by the election of these gentlemen was included the vacancy of Mr. Justice PRATT.

The Constitution provides that "When a vacancy shall occur otherwise than by expiration of term in the office of justice of the Supreme Court the same shall be filled for a full term, at the next general election, happening not less than three months after such vacancy occurs." This relator, Coleridge A. Hart, claims that both by the common law and the Statutory Construction Act the date on which the event occurs, from which time is reckoned, must be excluded from the computation, and that, therefore, the general election held on November 3d, 1896, happened less than three months after the vacancy occasioned by the death of Mr. Justice PRATT on August 3d, and insists that the vacancy should have been filled at the general election held in the year 1897. He was placed in nomination by the Prohibition party, and also by an independent party called the "Independent Citizens Organization," in form as follows: "For Justice of the Supreme Court in the Second Judicial District, to fill vacancy in place of Calvin E. Pratt, deceased," and he duly filed with the secretary of state, prior to said election and within the required time, a certificate of nomination therefor, but the secretary of state refused to certify such nomination to the election officials of said judicial district. Subsequently he applied at a Special Term for a mandamus to compel the secretary of state to certify to such nomination, but the application was denied on October 29th,

1897. Nevertheless, several thousand votes were cast generally for the relator for the office of justice of the Supreme Court, and four or five electors cast their votes specifically "to fill vacancy in place of Calvin E. Pratt, deceased." At that election the electors of the second judicial district were called upon to elect a justice of the Supreme Court to fill the vacancy caused by the expiration of the term of Mr. Justice BARTLETT, who was elected to succeed himself, and hence the votes cast generally for this relator were treated as cast to fill the vacancy for which notice had been given by the secretary of state. In due course the state board of canvassers canvassed the votes given generally for justice of the Supreme Court, and Mr. Justice BARTLETT, having received the largest number of votes, was declared elected. The board of canvassers of Westchester county omitted in their return to the state board of canvassers to state the number of votes cast for the relator "to fill the vacancy in place of Calvin E. Pratt, deceased," and thereafter, under section 133 of the Election Law, the appellant procured a writ of mandamus requiring the said board of canvassers of Westchester county to reconvene and correct their error, and in pursuance thereof they met on January 26th, 1898, and made a new statement, in lieu of their former statement, as follows: "And also that there were given and cast for justice of the Supreme Court to fill the vacancy in place of Calvin E. Pratt, deceased, five votes, of which C. A. Hart received one and Coleridge A. Hart received four," which corrected return was duly transmitted to the state board of canvassers, which thereafter and on February 16th reconvened and made a new statement with respect thereto, which was as follows:

"STATE OF NEW YORK, ss.: New and corrected statement of the board of state canvassers of votes cast in the second judicial district for justice of the Supreme Court, to fill vacancy in the place of Calvin E. Pratt, deceased, in accordance with a new or corrected return made by the board of county canvassers of Westchester county, under the provisions of sections 133 and 134 of the Election Law.

" Statement of the board of state canvassers of the votes given and cast for justice of the Supreme Court to fill vacancy in the place of Calvin E. Pratt, deceased, at a general election held November 2, 1897. The whole number of votes given and cast in the second judicial district of the State of New York, at said general election, ' for justice of the Supreme Court, to fill vacancy in place of Calvin E. Pratt, deceased,' for all the candidates therefor was five.

" Of which C. A. Hart received one and Coleridge A. Hart received four. All of which votes were given and cast in Westchester county.

" Dated at ALBANY, N. Y., *February 16th*, 1897.

"JAMES A. ROBERTS,
"*Comptroller.*

" A. B. COLVIN,
"*Treasurer.*

" THEODORE E. HANCOCK,
" *Attorney-General.*"

At such meeting the relator Hart appeared before the board of state canvassers and demanded that the board should pro- ceed to determine and declare what person had been, by the greatest number of votes cast, duly elected to the office of justice of the Supreme Court, to fill the vacancy in place of Calvin E. Pratt, deceased. His demand was denied, and there- upon he made application at a Special Term of the Supreme Court for a mandamus against the state board of canvassers, requiring that board " to determine and declare who was, by the greatest number of votes, at the last state election, elected to fill the vacancy in place of Calvin E. Pratt, deceased." The Special Term refused the application without writing any opinion, and also without stating in the order the ground upon which it refused the writ. We are not advised, therefore, whether the writ was refused as a matter of law or in the exer- cise of discretion. A mandamus is addressed to the sound dis- cretion of the Supreme Court, and where it appears that the facts are such as to justify the court in refusing mandamus as

matter of discretion, this court will not interfere unless it affirmatively appears in the order denying the writ that the court did not deny the application in the exercise of its discretion. (*People ex rel. D. L. I., Co.* v. *Jeroloman*, 139 N. Y. 14; *People ex rel. Jacobus* v. *Van Wyck*, 157 id. 495.) In a proceeding under " The Reform Ballot Law " this court held that the court being moved to quash the writ because it required more than the party was entitled to, was at liberty to amend it, but having granted it in the exercise of its discretion, that discretion is not reviewable in this court. (*People ex rel. Hasbrouck* v. *Supervisors*, 135 N. Y. 522.)

It does appear from the order of the Appellate Division that that court in affirming the order of the Special Term based its decision not " upon discretion, but upon the questions of law involved in the case." But the order of the Appellate Division neither advises us of the grounds for the decision of the Special Term nor takes its place. Where there is room for the exercise of discretion in an application for a mandamus, it is addressed to the sound discretion of the Supreme Court, and generally, as in this case, in the first instance, to the Special Term of that court. If its decision is based on its view of a proper exercise of the discretion committed to it, that discretion may be reviewed by the Appellate Division of that court, and, if it reaches the conclusion that the Special Term has not properly exercised the discretion committed to it, it may for that reason reverse the order of the Special Term; but, if it affirms the order for whatever reason it may assign, the effect of the affirmance is not to deprive the order of the Special Term of any support it had either in the law or in the facts calling for the exercise of discretion. It matters not, therefore, that the Appellate Division, in affirming the order, chose to rest its affirmance upon the law and not upon discretion, as it did not determine that the writ should not have been refused as matter of discretion, and could not determine that the Special Term did not refuse it for that reason. Our conclusion is that, if the facts and circumstances before the Special Term were of such a charac-

ter as to have justified a refusal of the writ in the exercise of a sound discretion, we are not at liberty, in view of the form of the order, to determine that the dismissal of the application at Special Term was not based upon discretion, and hence it is not the subject of review in this court. It seems to us very clear that the situation presented was one that would have permitted the court to have refused the application as matter of discretion.

In the year 1896 the secretary of state gave the notice required by law that an election would be held to fill the vacancy occasioned by the death of Mr. Justice PRATT, and, in pursuance of that notice, candidates of the several parties were regularly placed in nomination and the election held, which resulted in a majority of the votes being cast for Mr. Justice GOODRICH, who was then filling the vacancy occasioned by the death of Mr. Justice PRATT by appointment from the governor; the state board of canvassers, in pursuance of the provisions of the statute, made a determination that he had been elected and thereafter he took his oath of office and entered upon the discharge of his duties. What the relator sought for in this proceeding was a determination by the same board that in the year following he was chosen by the electors of the district to fill the same vacancy and was duly elected. To this proceeding Mr. Justice GOODRICH is not a party, and its only effect would be to cast a cloud upon his title to the office and possibly embarrass to some extent his usefulness. Such a determination by the board of state canvassers, if favorable to the relator's contention, would neither give him the office nor deprive Mr. Justice GOODRICH of it. That result could be accomplished, if at all, only by an action in the nature of quo warranto brought by the attorney-general against the person who it is claimed unlawfully holds the office to which Hart makes claim, to determine the title to the office. That is the remedy provided by law for one who claims title to an office that is in the possession of another under a claim of right. (*People ex rel. Wren* v. *Goetting*, 133 N. Y. 569; *People ex rel. Lewis* v. *Brush*, 146 id. 60.)

In *Wren's* case the relator had been removed from the office of police clerk and by mandamus proceedings sought to compel the police justice to recognize him as clerk, and this court in affirming the order dismissing the writ said in part, Judge GRAY writing: "There is, however, this insuperable objection to the maintenance of this proceeding by the appellant, that mandamus is not the proper remedy in such a case. The office claimed is filled by another person, holding under color of right, and the question of the title to the office turns upon the construction of statutory provisions. It would be highly inappropriate to determine such a question in mandamus proceedings. The appropriate remedy, and an adequate one, is by information in the nature of quo warranto, in which proceeding the incumbent of the office can be heard in his own behalf upon the disputed question." The reasoning of that case is applicable in this proceeding, where the relator seeks a determination that he has been duly elected to an office that is in the possession of another, without that other being a party to the proceeding, and thus without an opportunity to be heard in defense of his rights. The court could, therefore, have properly decided that Hart ought not to be permitted to invoke the aid of a proceeding in which the person who is in possession of the office, claiming title thereto, is not a party, but should be left to his remedy in an action that the law provides for the determination of the title to an office. As the Special Term might have safely rested its refusal to grant the writ on this ground, we are not at liberty, in view of the order made by it, to assume that it did not.

The order should be affirmed, with costs.

All concur (HAIGHT, J., in result).

Order affirmed.