THE CITY OF NEW YORK, Respondent, *v.* ISAAC L. RICE et al., Appellants.

Streets — New York (city of) — municipal assembly has no power to authorize the placing or continuance of any permanent obstruction upon any street or sidewalk — revocation of permission to maintain such obstruction — notice to remove same, sufficient notice of revocation.

The ownership by a city of the fee of the land in its streets is impressed with a trust to keep the same open and for use as such. The trust is *publici juris*, that is, for the whole people of the state, and is under the absolute control of the legislature, in which body, as representing the people, is vested power to govern and to regulate the use of streets. There is no right in the city to use its property therein as it might corporate property nor otherwise than as the legislature may authorize for some public use or benefit. It follows, from the nature of its title, that the city cannot dispose of the streets for nor divert them to private uses. Any erection of permanent and substantial structures thereon not for a public use constitutes an encroachment or obstruction, and is, therefore, a public nuisance.

The charter of the city of New York (L. 1897, ch. 378) contains a provision giving the municipal assembly power to regulate the use of the streets and further provides (§ 49, subd. 3): "But they shall have no power to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof during the erection or repairing of a building on a lot opposite the same." The latter provision denies to the municipal assembly any power to consent to the private use of any part of a street as laid out.

The city may, in an action in equity, restrain the maintenance and compel the removal of a wall extending into the street beyond the house or

building line although it was erected by permission of the municipal assembly and with the consent of the commissioner of parks, and, if revocation of the permission was necessary, demand by the city for the removal of the wall was sufficient notice to the owner of such revocation.  *Ackerman* v. *True,* 175 N. Y. 353, followed.
*City of New York* v. *Rice,* 128 App. Div. 903, affirmed.

(Argued February 18, 1910; decided March 15, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 9, 1908, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The city of New York brought this action to restrain the defendant Rice from maintaining, and to compel him to remove, a masonry wall about his property, at the southeast corner of 89th street and Riverside drive; which had been constructed beyond the house, or building, line and upon the public streets aforesaid.  From the findings, made by the trial court, it appears that Rice, being the owner of a plot of land, which he had terraced up from the street level, in 1899, constructed about it ·a solid masonry wall, over 7 feet in height.  It was supported on the outside by six stone piers, or pillars, about 15 feet in height, and upon the wall was a stone coping a foot and a half in width.  This wall, with its piers, or pillars, on 89th street, extended·6 feet into the street, beyond the house, or building, line, and on Riverside drive 7 feet.  Rice obtained the following permission, by a resolution of the municipal assembly of the city of New York:

" *Resolved,* that permission be and the same hereby is given to Isaac L. Rice, of Number 400 West End Avenue, Borough of Manhattan, and City of New York, who is about to build a residence at the southeast corner of 89th Street and Riverside Drive, in the said Borough and City, to erect up to and upon the stoop-line of the said premises at 89th Street and Riverside Drive, a terrace wall, approximately eight feet high, to be composed of rough stone faced with marble or limestone, such terrace wall to constitute a part of the architectural motive of the stoop and entrance leading to the said contem-

plated residence." Thereafter, and about the time of the completion of the wall, he, further, obtained from the commissioner of parks, of the borough of Manhattan, the following consent: " Consent is hereby given to the maintenance of a terrace wall by Isaac L. Rice, New York City, in front of his premises, on the stoop-line, at the southeast corner of Riverside Drive and 89th Street, as shown on plan filed ·with this Department, by Henry B. Hertz, architect. This consent is not to be considered a precedent for favorable action upon application for permits to erect similar walls upon the stoop-line. In this case, a confusion in the provisions of the Charter and the fact that the street front and park front are both involved, led to the construction of the wall in good faith under the provisions of an ordinance of the Municipal Assembly." The wall was erected in substantial compliance with the permission, at considerable cost, and was ornamental, and not utilitarian, in its character. Both 89th street and Riverside drive are public streets of the city, in the borough of Manhattan, and the ownership of the fee of the bed of each is in the city. They are of a prescribed width between the house lines and the wall, in question, is substantially upon what is known as the stoop line in either street. The permits obtained from the municipal assembly and from the park commissioner were not, formally, recalled, or otherwise revoked than through the demand of the plaintiff, prior to this action, for the removal of the wall with its piers and pillars ; which demand was alleged in the complaint and is found to have been made, as a fact. It was, also, found that the portions of 89th street and of Riverside drive affected were within the jurisdiction of the commissioner of parks. The trial court reached the conclusion ·that the construction and maintenance of the wall were illegal and constituted a continuing trespass and a public nuisance ; that the resolution of the municipal assembly and the consent of the commissioner of parks were illegal and void and that the plaintiff should have ·judgment, enjoining the further maintenance of the structure and directing its removal and the restoration of the

sidewalk to the condition in which it would be without the same.

The judgment entered upon the decision of the trial court was unanimously affirmed by the justices of the Appellate Division, in the first department, and from the order of affirmance the defendants have further appealed to this court.

*Norman G. Johnson* and *Alfred F. Seligsberg* for appellants. These permits, never having been revoked by appropriate action, stand to-day in full force and effect. (*City of Buffalo* v. *Chadeayne,* 134 N. Y. 166.) Such uses of the public highway lay within the ordinance powers of the municipal assembly at the time of the issuance of the permit to the appellant Rice in November, 1899. (*City* v. *K. T. Co.,* 121 App. Div. 741; *People ex rel. Cross Co.* v. *Ahearn,* 124 App. Div. 844.)

*Francis K. Pendleton, Corporation Counsel (Clarence L. Barber* and *Theodore Connoly* of counsel), for respondent. A court of equity had jurisdiction, and it was the proper court to determine this controversy. (*City of New York* v. *K. T. Co.,* 104 App. Div. 223; *City of New York* v. *De Peyster,* 120 App. Div. 763; 190 N. Y. 547; *Village of Oxford* v. *Willoughby,* 181 N. Y. 160.) Portions of the public streets cannot be donated to private individuals by an ordinance of the city legislature. (*McMillan* v. *K. & E. Co.,* 107 App. Div. 411; *Williams* v. *S. R. & C. Co.,* 111 App. Div. 679; *Deshong* v. *City of New York,* 176 N. Y. 475; *City of New York* v. *K. T. Co.,* 104 App. Div. 223; *People ex rel. Cross* v. *Ahearn,* 124 App. Div. 840; *Hatfield* v. *Straus,* 117 App. Div. 671; 189 N. Y. 208; *Ackerman* v. *True,* 175 N. Y. 363.)

GRAY, J. The appellants concede that the permits granted by the municipal assembly and by the commissioner of parks, under which the wall in question was constructed beyond the house, and within the street, lines, were revocable; but they insist that, for want of a revocation by appropriate action,

the permits remain in full force.  Their contention is and, necessarily, must be, that there was authority, under the provisions of the city charter, in the governing body, or in this department of the municipality, to authorize a structure of this purely ornamental, or decorative, character.  I think the appeal must fail.  It is not a question of discretion, within the exercise of which that which is actually an occupation, or obstruction, of the street by an abutting property owner might, nevertheless, because of its decorative, or artistic, construction, as enhancing the attractiveness of the streets, or park thoroughfares, be permitted.  It is a question, simply, of the existence of any power in the municipality to consent to a permanent use of any part of a street for private purposes. That the construction of this wall was for the private purposes of the owner of the property, inclosed by it, is indisputable and it cannot be material how far it was a decorative feature of the neighborhood, if neither municipal assembly, nor park department, was vested with authority to sanction its maintenance.  The ownership by the city of the fee of the land in the streets is impressed with a trust to keep the same open and for use as such.  The trust is *publici juris,* that is for the whole People of the state, and is under the absolute control of the legislature ; in which body, as representing the People, is vested power to govern and to regulate the use of the streets.  There is no right in the city to use its property therein, as it might corporate property, nor otherwise than as the legislature may authorize for some public use, or benefit.  (*People* v. *Kerr,* 27 N. Y. 188; *Kellinger* v. *Forty-second Street & G. St. F. R. R. Co.,* 50 ib. 206 ; *Deshong* v. *City of New York,* 176 ib. 475, 483.)  It follows, from the nature of its title, that the city cannot dispose of the streets for, nor divert them to, private uses. Whatever the power of control, or of regulation, possessed by the legislature, it is restricted in the direction of what may be deemed to be a public use, having in view, of course, the demands of a progressive civilization.  (See *People* v. *Kerr, supra,* and *Story* v. *N. Y. Elev. R. R. Co.,* 90 N. Y. 122.) The streets were opened for the unrestricted use of the pub-

lic and the assessments for the costs were levied upon the properties benefited, and were paid, upon the implied promise that they should be maintained, in all their integrity, as public highways. Any erection of permanent and substantial structures thereon, not for a public use, would constitute an encroachment, or obstruction, and would, therefore, be a public nuisance. ( *Village of Oxford* v. *Willoughby*, 181 N. Y. 155.) Not only, therefore, does the nature of the title, by which the municipality holds the streets, forbid the inference of any implied power to grant the permission relied upon in this case; but such a power was, m express terms, withdrawn by a provision of the charter in force at the time. It contains the provision that the municipal assembly should have power to regulate the use of the streets and highways; "but they shall have no power to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof, during the erection or repairing of a building on a lot opposite the same." (Charter of 1897, sec. 49, subdiv. 3.) This provision, as construed by this court, denies to the municipal authorities any power to consent to the private use of any part of the street as laid out. The provision, as well as other statutory provisions relating to the jurisdiction and powers of the department of parks, upon which the appellants lay stress, as confirming through the permit of the commissioner their right to maintain the wall, have received very definite construction in *Ackerman* v. *True*, (175 N. Y. 353). In that case, the defendant had built his house over the line of the street to the extent of three feet and a half and the action was brought to compel him to remove so much of the building. The complainant was an adjoining property owner; but, necessarily, the right to the equitable relief, and to the compensatory damages sought, depended upon its being established that there had been such an interference with public and common rights as to create a public nuisance. It was held that the encroachment upon the street was a public nuisance, being an obstruction of the highway. The premises were

on Riverside drive, not far from these defendants' property, and the defendant there attempted to justify his acts under a permit issued by the commissioner of parks; who, as he claimed, was invested with power to permit such encroachments on streets within the jurisdiction of the park board. The statutes relied upon were held to be lacking in authority to the park board, or any member thereof, to grant to abutting property owners "a permit, or right, to extend the main wall of a permanent and substantial structure three feet and six inches into and beyond the line of the street." If such power was possessed, it was observed, it was unlimited, and the purpose for which streets were laid out might be impaired, or defeated. The charter of 1897 was then in force and it was said that any other construction would "result in practically annulling that portion of the Charter of Greater New York which provides that streets and other public places in the city shall be inalienable. Although it is true that the title of the streets in the city of New York is in the municipality, that title is held by it in trust for public use, and not even the Municipal Assembly has authority to permit permanent encroachments thereon." Citation is, then, made in the opinion of the inhibitory provision of the charter, already given above. Further provisions of the charter relating to the jurisdiction of the park board, under the revision of 1901, were not considered to have extended it so as to confer a right "to permit an abutting owner upon any of the streets of the city, * * * to encroach upon the street by the erection of permanent and substantial structures thereon." It was thought that the constitutionality of the statute, if construed to confer the power to permit such, would be very doubtful. The case of *Wormser* v. *Brown*, (149 N. Y. 163), was held to be inapplicable as an authority for the defendant's case. In that case, a bay window was constructed under a permit of the park department and an adjoining property owner, who complained of it as an illegal interference with the street, from which he suffered injury, was defeated upon two grounds. He was in *pari delicto*, in that there was an

erection upon his own property, extending into the street a greater distance, and he had failed to show any material injury. The two cases were held to be distinguishable and the doctrine of the *Wormser* case was considered to be insufficient to sustain the plaintiff's contention. It may be, further, observed that, in the present case, it is the city, which is invoking the aid of the courts in undoing that which has been illegally done. Our decision of *Ackerman* v. *True* has been followed in several well-considered opinions by the Appellate Division of the Supreme Court and its authority should not now be questioned. (See *City of New York* v. *Knickerbocker Trust Co.*, 104 App. Div. 223 ; *McMillan* v. *Klaw & Erlanger Constr. Co.*, 107 ib. 407 ; *Williams* v. *Silverman Realty & Constr. Co.*, 111 ib. 679 ; *Hatfield* v. *Straus*, 117 ib. 671 ; *People ex rel. Cross Co.* v. *Ahearn*, 124 ib. 840.)

Cases which relate to the right to construct and to maintain vaults, or cellars, under sidewalks of streets are inapplicable ; inasmuch as by the charter of Greater New York, and by statute for many years theretofore, authority had been expressly conferred upon municipal authorities to make, and to repeal, ordinances in relation to the construction and use of vaults. In *Deshong* v. *City of New York*, (176 N. Y. 475), that subject is quite fully discussed. I think it to be fairly clear that there is a distinction between the right to permit the use of the subsoil of a city street by an abutting owner and the right to permit a permanent encroachment upon the street, by which the absolute right of the People to the uninterrupted use thereof may be diminished. So, too, with respect to street awnings, which have been held to be within the power of the city authorities to authorize, the legislature has classified them with signs, horse troughs, telegraph posts and such like purposes, as legitimate street uses. (See Consolidation act of 1882, chap. 410, sec. 86, and City Charters, in sec. 49 of act of 1897 and sec. 50 in act of 1901 ; *Hoey* v. *Gilroy*, 129 N. Y. 132.) They are, within common-law rules, encroachments and obstructions ; but the most that could be said is that, if the legislature has stretched its power in delegating to

the governing body of the municipality the right to authorize the erection of awnings, such an encroachment is of too unsubstantial a nature to be seriously considered as a public nuisance.

I think that there is no force in the objection that an action in equity is not maintainable. (*Village of Oxford* v. *Willoughby*, 181 N. Y. 155.) If it could be assumed that some revocation of the permission given was necessary, on the part of the city, its demand for the removal of the wall was sufficient notice to the defendant Rice of the revocation. Upon his neglect, or refusal, to comply with the city's demand and in view of his claim to be legally entitled to maintain his wall, the appropriate, as, indeed, the most considerate, way to proceed to try out the question, whether he could be compelled to remove the structure as a continuing nuisance, was to bring the controversy before a court of equity, where it could be finally and completely determined.

For these reasons, I advise the affirmance of the judgment appealed from.

CULLEN, Ch. J., HAIGHT, VANN, WERNER and HISCOCK, JJ., concur; EDWARD T. BARTLETT, J., dissents.

Judgment affirmed, with costs.