CLARK SHIPSTON, Respondent, *v.* CITY OF NIAGARA FALLS, Appellant.

Fourth Department, April 30, 1919.

Highways — evidence establishing dedication, acceptance and user — abandonment — obstruction of portion of width of city street — Highway Law, section 234, relating to abandonment by non-user, construed.

Evidence held sufficient to establish that a city street became a public highway by dedication, acceptance and user, and that the north portion thereof has not been abandoned and the public easement therein lost by its occupation for storage of coal and other material and as a means of ingress and egress to and from an adjoining coal yard.

A public easement may, however, be lost by obstructing a highway.

The provision of section 234 of the Highway Law, that non-user for a period of six years effects an abandonment, does not extend to a mere encroachment. No encroachment, however long, destroys the public easement.

Even an obstruction which makes the highway impassable for vehicular traffic may not effect an abandonment, if enough of the highway is left open and in such a condition as to permit pedestrians to travel over it and it is so used.

Section 234 of the Highway Law, providing that non-user for a period of six years effects an abandonment, contemplates non-user of a part of the route and not merely part of the width of the highway, though it may be applied to a case where the highway is shifted to the side, leaving only a part of the old location abandoned.

The use of a portion of the width of a highway for storage of coal and other material, even if consented to by city officials, does not effect an abandonment of the public right.

The highways of the State are held in trust not for a particular town or municipality, but for the entire State, and this is so even in a case where the fee of the land is in the city.

·APPEAL by the defendant, City of Niagara Falls, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Niagara on the 13th day of February, 1918, upon the decision of the court after a trial at the Niagara Special Term.

The judgment decreed, among other things, that plaintiff acquired title to certain lands mentioned in the complaint.

*Robert J. Moore*, for the appellant.

*Ackerson & Chapin* [*John O. Chapin* of counsel], for the respondent.

KRUSE, P. J.:

The question presented by this appeal is whether Niagara avenue in the city of Niagara Falls, between the east bounds of Whirlpool street and the west bounds of the New York Central right of way, is an existing highway.

I think the question should be answered in the affirmative. The learned trial judge, at the request of the defendant, not only found that Niagara avenue was created and established by proceedings taken in the years 1851 and 1852, but that in 1854, or thereabouts, it was traveled over by wagons and other vehicles and used by pedestrians; that repairs were made to the roadway of that part of the street in question from time to time; and while vehicular traffic was made difficult by a railroad embankment constructed about 1882 across the street, it was continued down to as late as 1896, or a few years later; and that ever since the year 1852, or shortly thereafter, a sidewalk has been maintained within the bounds of this part of the street on the south side thereof, continuously used by pedestrians up to the present time, and within the last ten years a cement walk has been maintained there by the abutting property owner pursuant to the

directions of the municipal authorities of the city, and at no time has the street opposite the premises of the plaintiff been obstructed or closed for its entire width.

This street, including the section in question, has been mapped for many years as a street upon various maps in use in the city, and is so delineated upon the map referred to in the conveyance under which the plaintiff claims title.

There may be some question as to whether the book of records by which it was sought to show that the street was regularly laid out was sufficiently authenticated. It is claimed to be an ancient document, but proof of its history seems to be lacking. However, even if that evidence is entirely disregarded, there is abundant evidence without it to show that the street became a public highway by dedication and acceptance and user.

But it is said that this part of the street has been abandoned and the public easement lost. This claim is founded upon occupation by the plaintiff and his predecessor in title of the north half thereof for storage of coal and other material, and as a means of ingress and egress to and from the coal yard adjoining the street and the railroad embankment across the street.

Undoubtedly a public easement may be lost by obstructing a highway. Non-user for a period of six years effects an abandonment. (Highway Law [Consol. Laws, chap. 25; Laws of 1909, chap. 30 ], § 234, as since amd. by Laws of 1915, chap. 322; *Barnes* v. *Midland R. R. Terminal Co.,* 218 N. Y. 91, 98; *City of New Rochelle* v. *New Rochelle Coal & Lumber Co.,* 224 id. 696; *Town of Leray* v. *New York Central R. R. Co.,* 226 id. 109.)

But this rule does not extend to a mere encroachment. No encroachment, however long, destroys the public easement. Even an obstruction which makes the highway impassable for vehicular travel may not effect an abandonment if enough of the highway is left open and in such a condition as to permit pedestrians to travel over it and it is so used. The statute contemplates non-user of a part of the route and not merely part of the width of the highway, though it may. also be applied to a case where the highway is shifted to the side, leaving only a part of the old location. abandoned.

(*Mangam* v. *Village of Sing Sing*, 26 App. Div. 464; affd.,
on opinion below, 164 N. Y. 560.)

The most recent decision of the Court of Appeals dealing
with this question is the *Leray* case.  There a highway which
crossed the tracks of the New York Central Railroad Com-
pany was obstructed by building a freight house in the street
next to the railroad, obstructing the highway its entire width.
Some time afterward the railroad company tore up the
planking which had been laid between its tracks and also
the bridge from the highway to the tracks, thus effectively
making the highway impassable for vehicular travel over the
railroad.  But pedestrians continued to cut across the railroad.
The grade of the railroad was two or three feet lower than
that of the highway.  A path led from the highway down the
bank to the tracks, people went along this path onto the
tracks and then scattered in different directions, some went
straight across the tracks toward the freight house, others
diagonally, and still others walked along the track to the
station beyond the opposite side.  This condition existed for
more than six years and it was held by the Court of Appeals
that the public easement in the street had been lost, not only
where the freight house stood, but over the railroad right
of way as well.

Here there was no such condition.  There was no shifting
of the street to the side.  The sidewalk furnished a well-
defined way straight across the tracks to the intersecting
street within the bounds of the highway and was continually
used for public travel.

An encroachment like the one in question, even if consented
to by the city officials, would not effect an abandonment of the
public right.  The highways of the State are held in trust,
not for a particular town or municipality, but for the entire
State, and that is so even in a case where the fee of the land
is in the city.  As was said by Judge GRAY in *City of New
York* v. *Rice* (198 N. Y. 124): "The ownership by the city
of the fee of the land in the street is impressed with a trust
to keep the same open and for use as such.  The trust is
*publici juris*, that is for the whole People of the State, and
is under the absolute control of the Legislature; in which body,
as representing the People, is vested power to govern and

to regulate the use of the streets. There is no right in the city to use its property therein, as it might corporate property, nor otherwise than as the Legislature may authorize for some public use, or benefit."

I think the disposition of this case is controlled by the decision in the *Mangam* case.

New findings should be made to the effect that the *locus in quo* is an existing highway, and all findings made by the trial court inconsistent therewith should be disapproved and reversed, and the judgment should be reversed and the complaint dismissed, with costs.

All concurred.

Judgment reversed, with costs, and complaint dismissed, with costs. Findings disapproved and new findings made in accordance with the opinion.