In the Matter of the Application of JOHN KAHABKA, Appellant, for a Mandamus Order against FRANK X. SCHWAB and Others, Individually and Constituting the Council of the City of Buffalo, and Others, Respondents.

Fourth Department, May 2, 1923.

**Municipal corporations — mandamus by resident taxpayer to compel removal of gasoline curb pumps from streets of city of Buffalo — curb pumps constitute nuisance — common council has no right to authorize them to be maintained and is charged, under Charter of the City of Buffalo, § 13, subd. 7, and §§ 143 and 364, with duty of compelling removal — discretion of court will not be exercised to deny mandamus.**

Gasoline curb pumps located within the street lines of the streets of the city of Buffalo close to the curbstone and not within the part of the street reserved for vehicles but where they can be conveniently used in filling the tanks of automobiles, constitute a nuisance and the common council of the city has no right to authorize them to be maintained, and furthermore, it is the duty of the common council under subdivision 7 of section 13 and under sections 143 and 364 of the Charter of the City of Buffalo to have the curb pumps removed.

While the granting of mandamus to compel the common council to act lies in the discretion of the court, in this case, the council having adopted an ordinance on the question indicating a general intention to authorize such unlawful obstructions, the discretion ought not to be exercised to deny the application of the petitioner who is a resident and taxpayer of the city, and accordingly a peremptory mandamus order should have been granted.

APPEAL by the petitioner, John Kahabka, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 8th day of September, 1922, denying his application for a peremptory mandamus order to compel the removal of certain gasoline curb pumps from the streets of the city of Buffalo, New York.

*Franklin R. Brown,* for the appellant.

*William S. Rann* [*Charles S. McDonough* of counsel], for the respondents.

SEARS, J.:

The petitioner, a resident and taxpayer of the city of Buffalo, in this proceeding has sought by a mandamus order to compel the council of the city of Buffalo, the head of the department of public works and the head of the bureau of streets, to remove from the public streets of the city certain gasoline supply pumps particularly described in the petition, and all others of a similar character, as unlawful obstructions. The particular pumps described in the petition are located within the street lines close to the curbstone and not within the part of the street reserved for vehicles, but where they can be conveniently used in filling the tanks of automobiles which are driven up to the side of the street. Their maintenance has been expressly authorized by the council of the city of Buffalo under an ordinance adopted, as the respondents claim, pursuant to the provisions of the Charter of the City of Buffalo (Laws of 1914, chap. 217, as amd.).

By the city charter (§ 5, as amd. by Laws of 1916, chap. 260), except as otherwise provided by law, the city is given full and exclusive control over its streets and highways and power to do anything necessary to beautify the city or preserve or add to the safety, intelligence, comfort and well being of the city and its inhabitants. The city is also given power to prohibit or regulate the keeping and conveying of gunpowder and other explosive substances and other dangerous fluid or material; to regulate the use of streets and to declare in what manner and for what purposes they shall not be used, and to regulate by ordinance any matter within the powers of the city, and to exercise all powers necessary

24

and proper to carry into execution the powers granted to the city. (See Charter of the City of Buffalo, § 13, subds. 5, 7, 11; Gen. City Law, §§ 19, 20, subds. 22, 23, as added by Laws of 1913, chap. 247.)

In addition thereto, the charter (§ 143) contains this provision: " The city shall remove all encroachments upon and projections over the public grounds, streets, alleys and wharves, and abate all nuisances and cause the expense to be assessed upon the lands upon or in front of which such encroachments, projections or nuisances were, or upon the parcels of land benefited by such removal." Section 364 of the charter (as added by Laws of 1916, chap. 260) is to similar effect. In section 13, subdivision 7, there is the provision that the council shall enact ordinances to prevent the encroachment upon, projections over, injury to, or the incumbering of streets, alleys, wharves and public grounds.

We have recently had before us a proceeding involving the question whether newspaper stands, when erected within the public streets of the city of Buffalo, constituted unlawful obstructions, and we held that they did, and on appeal to the Court of Appeals our judgment was affirmed. (*People ex rel. Hofeller* v. *Buck,* 193 App. Div. 262; affd., 230 N. Y. 608.)

What Mr. Justice HUBBS wrote in that case is applicable here. " It is elementary law that the public is entitled to the free and unobstructed use of city streets and that any obstruction of such streets for private use interferes with the public right, constitutes a nuisance and may be removed at the suit of any interested citizen. There are certain exceptions to this general statement, as where there are temporary obstructions or obstructions which the courts have considered as not amounting to a substantial interference with traffic and as permissible and not in conflict with the purposes for which streets and highways are maintained. (*Callanan* v. *Gilman,* 107 N. Y. 360; *Cohen* v. *Mayor, etc.,* 113 id. 532.)

" It is stated in the elementary works on municipal corporations to be a diversion of the public streets for private use to permit them to be used for news-stands. (Dillon Mun. Corp. [2d ed.] p. 680; McQuillan Mun. Corp. § 1355.)

" The primary purpose of streets is for the use of the public for travel and transportation and any private obstruction or encroachment which interferes with such use is a nuisance.

" Under these general rules it has been held repeatedly that storekeepers cannot use any part of the sidewalk for their show cases, show windows, and other like purposes as the right of the public is absolute and paramount and the public has the right to the use of the entire street."

The gasoline tanks, while no doubt useful to many persons using the public streets, constitute a non-essential and private use, a use for the gain of the owner of the stand and not a use in a public or even *quasi* public capacity. Neither in the provisions of the charter nor any other statute to which our attention has been called have we found authority to authorize the city to divert the public streets to such private use. On this point, Mr. Justice HUBBS said in the *Hofeller* case: " It is conceded that a municipality has no right or authority to grant a license for the use of the public streets in an unlawful and illegal way, and that if the news-stands in question are unlawful and constitute obstructions it makes no difference whether or not they were authorized by the city of Buffalo or how long the city has permitted them to be so used, for a city holds the streets for the public use of all the people. (*Shipston* v. *City of Niagara Falls*, 187 App. Div. 424.)"

Cases of obstructions in the streets like hitching posts, stepping stones, watering troughs and awnings were pressed on our attention in the *Hofeller* case as they are here. Hitching posts, stepping stones, watering troughs and things of that kind are for a public use as was there pointed out, and as to awnings, Judge GRAY, in *City of New York* v. *Rice* (198 N. Y. 124), said: " So, too, with respect to street awnings, which have been held to be within the power of the city authorities to authorize, the Legislature has classified them with signs, horse troughs, telegraph posts and such like purposes, as legitimate street uses. (See Consolidation Act of 1882, chap. 410, sec. 86, and City Charters, in sec. 49 of act of 1897 and sec. 50 in act of 1901;* *Hoey* v. *Gilroy*, 129 N. Y. 132.) They are, within common-law rules, encroachments and obstructions; but the most that could be said is that, if the Legislature has stretched its power in delegating to the governing body of the municipality the right to authorize the erection of awnings, such an encroachment is of too unsubstantial a nature to be seriously considered as a public nuisance." But the obstruction of a gasoline pump is not insignificant; it rests not only in the structure itself but in the lines of vehicles frequently and sometimes almost continuously waiting for service. In our opinion the obstruction constitutes a nuisance.

The right to relief by mandamus unquestionably rests in the discretion of the court. (*Matter of Hart*, 159 N. Y. 284; *People ex rel. Lehmaier* v. *Interurban Railway Co.*, 177 id. 296; *People ex rel. East Side Harlem S. Assn., Inc.*, v. *Hylan*, 118 Misc. Rep. 341; affd., 202 App. Div. 745.)

* See Laws of 1882, chap. 410, § 86, as amd; Laws of 1897, chap. 378, § 49; Laws of 1901, chap. 466, § 50, as amd.— [REP.

In this case, however, the council having adopted an ordinance on the question indicating a general intention to authorize such unlawful obstructions, a discretion ought not to be exercised to deny the application. The petitioner has shown a clear right, and the prayer of the petition for a mandamus order should have been granted.

The order appealed from should be reversed, with costs, and a peremptory mandamus order requiring the respondents to remove the pumps specified in the petition should be granted, with fifty dollars costs.

All concur.

Order reversed, with costs, and motion for peremptory mandamus order requiring the respondents to remove the pumps particularly specified granted, with fifty dollars costs and disbursements.