In the Matter of the Application of FRANK N. McCoy, JR., Respondent, for a Peremptory Mandamus Order against EDMUND JORDAN and Others, Individually and Constituting the Board of Village Trustees of the Village of Peekskill, and Another, Appellants. (Appeal No. 1.)

Second Department, March 27, 1925.

Villages — mandamus to compel removal of gasoline pumps from street curb in village of Peekskill — village charter (Laws of 1883, chap. 117), tit. 5, § 3, subd. 24, imposes duty on trustees to prevent incumbrance on or obstruction in street — Laws of 1917, chap. 198, amending charter, does not authorize gasoline pumps in street — if said amendment should be construed to authorize erection then it is unconstitutional as authorizing use of public property for private gain — mandamus granted.

A peremptory mandamus order was properly granted against the trustees of the village of Peekskill and the street commissioner to compel the removal of

gasoline pumps from the street curbs, on the ground that they constitute an incumbrance on and an obstruction in the street, for subdivision 24 of section 3 of title 5 of the charter of the village of Peekskill (Laws of 1883, chap. 117) imposes the duty upon the trustees to prevent incumbering or obstructing the streets, sidewalks and crosswalks, and chapter 198 of the Laws of 1917, which amended the village charter by granting the trustees power to issue permits for placing tanks and containers for the storage of gasoline within the bounds of a public highway and beneath the surface thereof and permitting arrangements for drawing therefrom upon the curb line of the street, does not authorize the construction of the pumps on the curb line of the street.

If said amendatory statute should be construed as granting the village trustees power to authorize the construction of gasoline pumps within the street line, then it is unconstitutional as authorizing the use of public property for private gain.

YOUNG, J., dissents, with opinion.

APPEAL by the defendants, Edmund Jordan and others, from a peremptory mandamus order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 24th day of January, 1925, requiring the defendants to remove certain gasoline pumps erected at the curb and within the boundaries of the public highways in Peekskill, and to keep and maintain said highways free from the same or similar pumps.

*Daniel J. Kenefick* and *Leverett F. Crumb* [*Robert F. Barrett* with him on the brief], for the appellants.

*Myle J. Holley,* for the respondent.

*Frederick P. Close* [*Patrick J. Rooney* with him on the brief], for the New Rochelle Retail Tire and Accessories Dealers Association, as *amicus curiæ.*

KELLY, P. J.:

This is an appeal from an order of the Special Term, Westchester county, granting an application made by Frank N. McCoy, Jr., a resident citizen and taxpayer of the village of Peekskill, for a peremptory order of mandamus requiring the members of the board of trustees of said village of Peekskill and its street commissioner to remove from the streets of said village certain gasoline supply pumps, particularly described in the petition, and all others of a similar character, as unlawful obstructions.

The village of Peekskill is a municipal corporation, existing under a charter (Laws of 1883, chap. 117, and the acts amendatory of and supplemental thereto), in and by the provisions of which the legislative, executive and administrative powers are vested in a board of trustees, who are appellants here, with appellant Yocom, the street commissioner. The charter among other things (Tit. 5, § 3, subd. 24) provides as follows: " The board of trustees shall

have the management and control of the finances and all the property, real and personal, belonging to the said corporation, and shall have full power and authority within said village, and it shall be their duty: * * * 24. To prevent incumbering or obstructing the streets, sidewalks and crosswalks in any manner whatever." In so far as the appellant street commissioner is concerned, the charter (Tit. 4, § 6) provides as follows: " The street commissioner shall, under the direction of the board of trustees, exercise a general superintendence over the roads, avenues, crosswalks, sidewalks and public places of said village, and cause all obstructions, incumbrances and nuisances to be removed therefrom."

The gasoline supply pumps in question were at different times authorized by the board of trustees of the village of Peekskill. They are permanent structures attached to a concrete base or foundation in the public highway within a few feet of the curb separating the sidewalk from the roadway. The pumps are of metal with a glass globe on the top, and a rubber hose attached thereto. They are about nine feet, two inches in height, about fifty-seven and one-half inches in circumference at the base, and about thirty-seven and one-half inches in circumference at the top. They are connected with tanks placed underground below the pumps, and the tanks are also under the surface of the public highway. The pumps are used for the sale of gasoline for automobiles and other motor vehicles.

By chapter 198 of the Laws of 1917 the village charter was amended by the Legislature by adding to subdivision 27 of section 3 of title 5, which related to the powers of the village board of trustees, the following: " To also issue permits for placing tanks and containers for the storing of gasoline, kerosene or other oils, within the bounds of a public highway and beneath the surface thereof, and to permit arrangements for drawing therefrom upon the curb line of such street, and to charge such fee, license or rental therefor as they may deem proper and to make such regulations in reference thereto as they may see fit, and to prohibit all such constructions without permits or licenses, and also to prohibit the same at any point or place in any highway that they may deem the location thereof as unnecessary or improper, and to cause the removal thereof at the expense of the adjoining property owner, when said board shall deem it necessary and proper, and to prevent the construction and cause the removal of areaways and steps within the lines of a public highway, and to forbid or grant permission for the construction of vaults within the lines of a public highway, and to fix and collect rentals therefor."

This is the law under which the village trustees assert their right to authorize the construction of these permanent structures in the highway. In thus amending the charter in 1917 the Legislature did not alter the existing mandatory duty of the trustees contained in the original charter as revised in 1883 (Tit. 5, § 3, subd. 24): " 24. To prevent incumbering or obstructing the streets, sidewalks and crosswalks in any manner whatever."

The learned counsel for the petitioner, respondent, argues that the Legislature in passing this amendment in 1917 did not authorize the erection of these permanent structures in the highway. He says the mandatory duty of preventing all obstructions in the highways still remained, and that the power given to the trustees in the amendment of 1917, " To also issue permits for placing tanks and containers for the storing of gasoline, kerosene or other oils, within the bounds of a public highway and beneath the surface thereof, and to permit arrangements for drawing therefrom upon the curb line of such street," has no reference to the permanent erection of a pump in the public highway. Respondent argues that the words " upon the curb line " refer to the drawing of the oil from the tanks underneath the ground, that the " arrangements " authorized by the amendment are " arrangements " for drawing the oil from the tanks on the curb line, but not the erection of a permanent obstruction. Of course it is our duty to sustain the act of the Legislature if it can be done by reasonable construction. I can see how the amendment of 1917 which permitted tanks and containers under the surface of the street and arrangements for drawing oil therefrom at the curb line might be construed to mean that it would not be unlawful to temporarily connect the underground tank with a hose or movable pipe, so that the oil might be drawn out at the curb and put into the automobile, the apparatus, hose or pipe to be removed when the work was done. This express legislative permission might have been deemed necessary, because the operation of filling the automobile was really the use of the surface of the street for private work which ordinarily would be done in a garage or on private property. It may be that the amendment could be sustained by this construction, so that the employees of the oil dealer might not be charged with unlawfully obstructing the highway while standing with the hose or pipe in hand, filling the automobile, when the apparatus, hose or pipe was removed when the particular job was done. Such temporary license might be held to be reasonable, but the respondent contends that if the amendment of 1917 is to be construed as authorizing the erection and maintenance of these permanent pumps in the public highways, it was beyond the power of the Legislature.

Mr. Justice TOMPKINS at Special Term held that the permanent pumps were a non-essential and private use of a public highway for the gain or profit of the owner of the structures and that they constituted an unlawful use, making ineffective any act of the Legislature which assumed to authorize them. (Citing *People ex rel. Hofeller* v. *Buck*, 193 App. Div. 262; affd., 230 N. Y. 608; *Cohen* v. *Mayor, etc., of New York*, 113 id. 532; *Warden* v. *City of New York*, 123 App. Div. 733; affd., 193 N. Y. 669; *Lyman* v. *Village of Potsdam*, 228 id. 398; *Holmes Electric Protective Co.* v. *Williams*, Id. 407; *Ackerman* v. *True*, 175 id. 353; *City of New York* v. *Rice*, 198 id. 124; *City of Mt. Vernon* v. *N. Y., N. H. & H. R. R. Co.*, 232 id. 309.)

In *Matter of Kahabka* v. *Schwab* (205 App. Div. 368; affd., 236 N. Y. 595) this court in the Fourth Department reversed an order of the Special Term denying an application for a peremptory mandamus order requiring the municipal authorities of the city of Buffalo to remove gasoline pumps erected in the public highway under permits granted by the city council, and granted the mandamus order applied for. The pumps or apparatus involved in that proceeding were identical as to size, structure and location close to the curb line with the pumps complained of in the case at bar. Mr. Justice SEARS, writing for the Appellate Division and discussing the character of the obstruction, said: " But the obstruction of a gasoline pump is not insignificant; it rests not only in the structure itself but in the lines of vehicles frequently and sometimes almost continuously waiting for service. In our opinion the obstruction constitutes a nuisance." The *Kahabka* case having been affirmed by the Court of Appeals, we might well rest our decision in the case at bar upon that case. But the learned counsel for the appellants argues that here we have in the amendment of 1917 to the village charter an express delegation by the Legislature to the village trustees of authority to authorize the erection and maintenance of these structures in the highway. It is claimed that the amendment of 1917 granted greater powers to the trustees of the village of Peekskill than were possessed by the city of Buffalo under the plenary powers concerning the use of the streets in that city conferred by the Charter of the City of Buffalo (Laws of 1914, chap. 217, § 5, as amd. by Laws of 1916, chap. 260; Id. § 13, subds. 5, 7,* 11) and the General City Law (§§ 19, 20, subds. 22, 23, as added by Laws of 1913, chap. 247). The power granted to the city of Buffalo to control the streets in that city and to do anything necessary to " add to the safety, intelligence, comfort and well being of the city and its inhabitants,

---

* Since amd. by Laws of 1923, chap. 352.—[REP.

\* \* \* to regulate the use of streets and to declare in what manner and for what purposes they shall not be used, and to regulate by ordinance any matter within the powers of the city, and to exercise all powers necessary and proper to carry into execution the powers granted to the city," was certainly very broad, but it was held that the city authorities were not authorized to divert the public streets to private use. The obstruction caused by these gasoline pumps was distinguished from the hitching posts, stepping stones, watering troughs, awnings and other encroachments which have been held to be of too unsubstantial a nature as to be seriously considered a nuisance.

I doubt whether the Legislature by the amendment of 1917 intended to give to the village trustees the power to authorize these obstructions, and in any event I think the Legislature had no power to appropriate any part of the public highway to the use of the owners of these gas pumps. The court said in the *Kahabka* case: " The gasoline tanks, while no doubt useful to many persons using the public streets, constitute a non-essential and private use, a use for the gain of the owner of the stand and not a use in a public or even *quasi* public capacity." The Court of Appeals said in *Bradley* v. *Degnon Contracting Co.* (224 N. Y. 60, 71): " We are thus brought to the question whether or not the construction and operation of the tramway was a public use. Whatever may be the power of control, or of regulation of the public highways, possessed by the Legislature, it was restricted from authorizing the appropriation of the part of Seventy-ninth street to the construction and operation of the tramway as private property and exclusively for private use. (*City of New York* v. *Rice*, 198 N. Y. 124; *Fanning* v. *Osborne*, 102 N. Y. 441.) To constitute a use public, it must be for the benefit and advantage of all the public and in which all have a right to share — a use which the public have a right to freely enter upon under terms common to all. Public use necessarily implies the right of use by the public. The character of the use, whether public or private, is determined by the extent of the right by the public to its use, and not by the extent to which that right is or may be exercised. If a person or corporation holds or possesses the use, the public must have the right to demand and compel access to or the enjoyment of it." In *Ackerman* v. *True* (*supra*) it was held that a statute authorizing a local park board in the city of New York to grant a permit to a private citizen to encroach upon the street by the erection of permanent and substantial structures would be of doubtful constitutionality. Judge MARTIN said (at p. 365): " Moreover, if that statute were to be thus construed, its constitutionality would be

at least doubtful, for even the Legislature cannot authorize the condemnation of private property for other than public uses. The effect of a construction which would permit the park board or any of its members to sell or give the right to obstruct the streets or highways therein, could not be otherwise than detrimental to and destructive of the interests of the municipality and its inhabitants." This was followed by *Hatfield* v. *Straus* (189 N. Y. 208), and the effect of these decisions was far reaching and salutary. Show cases, show windows, signs and other structures encroaching upon the public highways in New York city were done away with. No permanent oil pumps such as are involved in the present controversy are allowed to obstruct the highways in the boroughs of Greater New York. Automobiles are filled in garages or pumping stations reached by driving in on private property, or from small tanks which are wheeled out to the curb for temporary use and then returned to the place from whence they came.

In *Town of Mt. Pleasant* v. *City of New York* (199 App. Div. 315) this court affirmed a decision of the Special Term which directed the removal of abutments supporting the Croton aqueduct from a public highway in the town. Mr. Justice J. ADDISON YOUNG at Special Term, referring to the claim of the defendant that owing to lapse of time there was a presumption that the abutments had been consented to by the municipal authorities, said: " On the other hand, no such presumption of consent arises from the existence for any length of time of a permanent structure like the one in question occupying a portion of the public highway, nor is it within the power of the municipal authorities to give such consent nor of the Legislature to vest them with such power. (*City of New York* v. *Rice,* 198 N. Y. 124; *Acme Realty Co.* v. *Schinasi,* 215 id. 495; *Village of Oxford* v. *Willoughby,* 181 id. 155.) " This court affirmed the judgment in the aqueduct case upon the opinion at Special Term.

In *City of New York* v. *Rice* (198 N. Y. 124), Judge GRAY, writing for the Court of Appeals, said: " Whatever the power of control, or of regulation, possessed by the Legislature, it is restricted in the direction of what may be deemed to be a public use, having in view, of course, the demands of a progressive civilization," and the learned counsel for the appellants says in his points: " The gasoline curb pumps are a public use as well as a street use, and in any event do not constitute an unreasonable interference with the public right of passage." We have seen many changes in the use of the public highways since the decisions in *People* v. *Kerr* (27 N. Y. 188) and *Kellinger* v. *Forty-second Street, etc., R. R. Co.* (50 id. 206). In recent years the use of automobiles has brought

about serious conditions and difficult traffic problems, in the cities at least. The use of the public streets and highways for storage or parking purposes has curtailed the free use of these streets and highways by pedestrians and vehicles. Where the owners of private vehicles were formerly compelled to resort to stables or garages for the storage of their vehicles when not in use, we find miles of city streets appropriated for this purpose. If this is " a public use, having in view, of course, the demands of a progressive civilization," I think we should be slow to sanction further appropriation of the public highway for the convenience and profit of those supplying them with motor power.

There are many and increasing demands for necessaries for our private health, comfort and happiness — food, clothing, fuel and the like and for other conveniences of modern life, but hitherto purveyors and purchasers have been compelled to carry on their transactions on private property. I hope I am alive to the demands of progressive civilization, but I think we should not lose sight of the fundamentals. The " King's Highway " has hitherto been regarded as belonging to all the people. I hesitate to countenance further encroachments upon it for private gain. If private stations for supplying oil and fuel may be erected upon it, I do not know where we are to draw the line. I, therefore, recommend affirmance of the mandamus order directing the removal of these permanent pumps or structures from the public highways in the village of Peekskill, with costs.

MANNING, KELBY and KAPPER, JJ., concur; YOUNG, J., dissents and reads for reversal of the order.

YOUNG, J. (dissenting):

By chapter 198 of the Laws of 1917 the charter of the village of Peekskill (Laws of 1883, chap. 117, tit. 5, § 3, subd. 27) was amended and additional power granted the municipal authorities, as follows:

" To also issue permits for placing tanks and containers for the storing of gasoline, kerosene or other oils, within the bounds of a public highway and beneath the surface thereof, and to permit arrangements for drawing therefrom upon the curb line of such street, and to charge such fee, license or rental therefor as they may deem proper and to make such regulations in reference thereto as they may see fit, and to prohibit all such constructions without permits or licenses, and also to prohibit the same at any point or place in any highway that they may deem the location thereof as unnecessary or improper, and to cause the removal thereof at the expense of the adjoining property owner, when said board

shall deem it necessary and proper, and to prevent the construction and cause the removal of areaways and steps within the lines of a public highway, and to forbid or grant permission for the construction of vaults within the lines of a public highway, and to fix and collect rentals therefor."

This I think must be considered as express authority to permit the pumps in question as an arrangement for drawing gasoline from tanks located within the bounds of the public highway.

The remaining question is as to the power of the Legislature to confer such authority. The majority of the court, as I understand it, is of the opinion that the act of the Legislature referred to is ineffective for lack of power, but with this conclusion I am unable to agree.

It has been held repeatedly that the Legislature may authorize structures in the public streets even for private use and benefit, which are reasonably incident to the ordinary uses of the street, and which without such authority would be public nuisances. (*Hoey* v. *Gilroy*, 129 N. Y. 132; *Jorgensen* v. *Squires*, 144 id. 280; *Wormser* v. *Brown*, 149 id. 163; *Bradley* v. *Degnon Contracting Co.*, 224 id. 60, 68.)

Considering the number of those traveling upon the public streets who find it convenient to use these pumps, I do not think it can be held as a matter of law that their use is not reasonably incident to the ordinary uses of the highway.

These pumps cause less interference to pedestrians than the drive-in stations, because to reach such stations, the automobiles necessarily cross the sidewalks. They do not cause more interference in the street than the use of the overhead pipe we find in some places. Telephone and electric light poles are authorized upon our streets in the interest of the public, and in these days most householders find it convenient to use the gasoline pump at the curb while traveling upon the highway.

In my opinion, the decisions in *Matter of Kahabka* v. *Schwab* (205 App. Div. 368; affd., 236 N. Y. 595) and *People ex rel. Hofeller* v. *Buck* (193 App. Div. 262) are not in point. In both these cases there was no specific delegation of power to the city by the Legislature. This distinction is apparent from the case of *People ex rel. Pumpyansky* v. *Keating* (168 N. Y. 390), where it was held that a news-stand within the street was not an unlawful obstruction because the Legislature had authorized the city to permit it, while in *People ex rel. Hofeller* v. *Buck (supra)*, where there was no legislative sanction, a similar obstruction was held unlawful.

The prevailing opinion cites the case of *Town of Mt. Pleasant* v.

*City of New York* (199 App. Div. 315) as an authority denying power in the Legislature to grant the municipal authorities the right to permit the encroachment in question.   It should be observed that the encroachment in that case was the solid masonry of the aqueduct which occupied more than two-thirds of the width of the highway, and not in any sense incident to the ordinary use of the street.   It may well be that the Legislature would be powerless to authorize such a structure in the highway.

It is apparent, however, that the decision in that case turned on the lack of legislative sanction permitting the encroachment. It was stated in the opinion that nothing short of clear, direct and express legislative action would be sufficient to authorize the incumbrance, and that no such authority was shown.

For these reasons, I vote to reverse the order appealed from.

Peremptory mandamus order directing the removal of the permanent pumps or structures from the public highways affirmed, with costs.