Fred A. Young, P. J.
The above-entitled claim was filed in the office of the Clerk of the Court of Claims and served upon the Attorney-General on April 11, 1960. The claim was based upon the appropriation by the State of New York of several parcels of property owned in fee by the claimant municipality. The appropriations were made pursuant to section 347 of the Highway Law for Thruway purposes. The claimant is a municipal corporation and a political subdivision of the State of New York.
Fourteen parcels totaling 16.784 acres were, at the time of the appropriation, beds of streets. Ten parcels totaling 61.087 acres were used for the purpose of water supply for the City of Albany. Two parcels appropriated for permanent easements of .326 acres were also used by the city for water supply purposes at the time of the appropriation.
The claimant also seeks consequential damages to 50.506 acres of property resulting from loss of access thereto.
The State of New York appropriated the beds of the several streets involved between the years 1951 and 1954, the other appropriations were made in 1953, by filing maps and descriptions in the office of the Clerk of Albany County. The date July 1, 1953 was agreed upon by the parties as the taking date for interest purposes.
Acquisition of the street beds was had pursuant to subdivision 11-a of section 347 of the Highway Law, said section provided that title of the property vest in the State of New York upon the filing of the map and description in the office of the County Clerk of the county in which the property is located. It did not provide for personal service of the map upon the owners of any interest in the streets, but in lieu thereof provided for publication of a notice of the filing together with a description of the property. Publication of the subject street bed takings was duly made between the years 1951 and 1954. Personal service was never made upon the claimant municipality for these takings. With respect to the remaining takings personal service was made in all but one instance on May 13,1960.
As we have already noted the claim herein was not filed until April 11, 1960. The State of New York takes the position that *302 the filing was not timely with respect to the street bed takings. The claimant relies on subdivision 1 of section 10 of the Court of Claims Act, which provides that a claim for appropriation of property shall be filed within two years after the accrual of the claim or where title is vested by the filing of a description and map in the office of the County Clerk or Register, then within two years after personal service of a copy of such description and map and notice of filing thereof or if personal service cannot be made, within the State, then within two years after the filing of the description and map and the recording of notice of filing thereof. Subdivision 11-a of section 347 of the Highway Law does not provide for any time limitation for the filing of a claim, it contains the following clause: ‘ ‘ All other provisions in this section relating to claims on account of such appropriation shall apply to claims which may arise under this subdivision with the same force and effect.”
Subdivision 13 of section 347 of the Highway Law provides in part: ‘ ‘ Any owner may present to the court of claims a claim for the value of such property appropriated and for legal damages, as provided by law for the filing of claims with the court of claims.”
As we have already noted subdivision 11-a provides for vesting of title upon the filing of a map. It incorporates the other provisions of section 347 by reference including the manner in which a claim can be presented to the Court of Claims.
Subdivision 11-a was added to section 347 of the Highway Law by chapter 686 of the Laws of 1943. Subdivision 1 of section 10 of the Court of Claims Act was amended to cover instances where title is vested by the filing of a map and description by chapter 688 of the Laws of 1948. Ordinarily if these statutes are in conflict it would seem under the usual rules of statutory interpretation, that the later statute prevails.
Examining the bill jacket of chapter 686 of the Laws of 1943 to ascertain legislative intent we find a memorandum to the Governor’s Counsel submitted by the New York State Department of Public Works recommending approval of the bill by the Governor. It states in part: “ Another change in the procedure relates to the immediate acquisition of the beds of streams and streets. Generally, when the owner of lands abutting a street or stream receives compensation for his property, it includes the frontage value. However, the cost of an abstract of title is very large and as long as the abutting owner is compensated, it is suggested that the State could be spared the high cost of a search of the bed or street or stream. The procedure outlined in the bill calls for the filing of a map in the County Clerk’s *303 office and the publication of a notice, and if the owner makes a claim for damages, he is required to furnish a search to the Attorney-General. These several provisions are now contained in the Flood Control Law (Chapter 862, Laws of 1930, as amended) and experience has shown that they are desirable steps. Attention has been given to due process of law as required by the Constitution.”
Subsequently various other appropriation statutes were amended to contain similar provisions.
Examining the bill jacket for chapter 688 of the Laws of 1948, we find that the bill was a Department of Public Works bill and that a memorandum submitted to the Governor’s Counsel by the Department of Public Works states in part: “ This bill seeks to assure that the owners of lands so appropriated shall have notice of such appropriation and adequate opportunity to file a claim.”
It is obvious that the purpose of subdivision 11-a was to put the burden of procuring an abstract of title of a street bed upon the one claiming the fee thereto, and not to set up any Statute of Limitations.
The Court of Claims Act, provided the time for the filing of appropriation claims, and it is obvious that by 1948 there was some misgivings about adequate notice to people whose property was appropriated by the filing of a map and hence the Court of Claims Act was amended so that in appropriation claims where title vests by the filing of a map, the claimant has two years from the date of personal service in which to file a claim, if he can be found in the State. Hence, we conclude that the time limitations as set forth in subdivision 1 of section 10 of the Court of Claims Act are applicable and the claim herein is timely filed.
The State further contends that assuming the claim was timely filed the claimant is not entitled to damages arising from the appropriation of the street beds. The State relies on the principle that ownership by the city of fee of the land in the street is impressed with a trust to keep the same open and for use as such, the trust is publici juris, i.e., for the whole People of the State, and is under the absolute control of the Legislature in which body, as represented by the People is vested the power to govern and to regulate the use of the streets. (City of New York v. Rice, 198 N. Y. 124; People v. Kerr, 27 N. Y. 188; People ex rel. Palmer v. Travis, 223 N. Y. 150.)
In the instant situation the fee to the bed of such street was acquired in fee not for State highway purposes, but for the purposes of the Thruway. Although characterized as an arm or agency of the State (Easley v. State of New York, 1 N Y 2d 374) *304 the Thruway is not the State of New York (Matter of Plumbing Assn. v. New York State Thruway Auth., 5 N Y 2d 420). It is a separate body corporate and politic (Strang v. State of New York, 206 Misc. 734; Pantess v. Saratoga Springs Auth., 255 App. Div. 426). The Thruway is a public corporation enjoying separate existence from the State, but exercises a governmental function (Bird v. New York State Thruway Auth., 8 A D 2d 495).
The Attorney-General cites numerous authorities to the effect that the construction, maintenance and control of highways is a governmental function. There is no question about this, but we also note in passing that the construction and maintenance of toll roads or toll highways has been performed in many instances by private individuals and corporations, such operations are not necessarily governmental functions. However, examination of the New York State Thruway Act (Public Authorities Law, art. 2, tit. 9) reveals that the Thruway Authority was created to construct a toll highway the cost of which was to be ultimately paid through tolls collected from the users thereof, rather than by the State.
The sections of the Thruway for which the subject appropriations were made were originally acquired and constructed by the State. However, we note particularly that subdivision 2 of section 357 of the Public Authorities Law provides that upon assuming jurisdiction of a Thruway section from the State of New York: “ the authority, if it shall not have already provided for payment thereof, shall be indebted to the state of New York in an amount equal to the cost of the real property and the rights therein acquired by the state for the purpose of such thruway section or connection or part thereof, or such highway connection, and the cost of construction by the state of that portion of the thruway so assumed.”
The section further provides for the manner of repayment to the State. Actually while the Thruway Authority was created to perform a governmental function, it was to perform such function at no cost to the State Treasury.
Returning to a consideration of the City of New York v. Rice (198 N. Y. 124, supra) and People ex rel. Palmer v. Travis (223 N. Y. 150, supra) it is obvious that the rationale of those decisions was that land acquired at a cost to the public treasury, for one use could be devoted, by the sovereign, to another governmental use without payment to its political subdivision owning the fee. In other words, payment for such property would be tantamount to the sovereign taking its money out of one pocket and placing it in another. We find such reasoning is not applicable to the subject situation. In the instant case the *305 Legislature in setting up the Thruway Authority intended that the highway be constructed and paid for by tolls collected from the users thereof rather than tax moneys paid generally by the People of the State.
We do not think that the Legislature intended to place the burden of payment of part of the Thruway upon the taxpayers of Albany or any other municipality. To hold otherwise would be contra to the entire plan and scheme underlying the enactment of the Thruway Authority Act.
We therefore find in the instant situation, that the claimant is entitled to recover compensation for the value of the fee of the street beds appropriated for Thruway purposes.
We note that chapter 180 Laws of 1960 added a new section 3 to article 2 of the General Municipal Law, which provides for compensation for the property of municipal corporations taken by eminent domain where such property is taken for a purpose substantially different from that for which it is held by such municipal corporation.
While this section was enacted subsequent to the takings herein and has no retroactive effect it represents a substantial departure from the rule in People v. Kerr (27 N. Y. 188, supra) and City of New York v. Rice (198 N. Y. 124, supra) and signifies that it is now the public policy of the State that the taxpayers of a political subdivision of the State should not bear a disproportionate share of the burden of an improvement, which is substantially different in purpose from the function for which the property is held by such political subdivision.
We also note that the defendant further contends that assuming that the claim was properly filed and the property interest of the claimant is that of a private owner, damages for the street bed appropriation were only nominal.
We cannot agree with this proposition. The mere fact that property is owned by a municipality and devoted to its corporate purposes does not of itself mean that such property is devoid of value. While the use of street beds is restricted and they are not usually traded in the real estate market, the acquisition of land to be used for street purposes is usually accomplished at considerable cost to the municipality acquiring such property.
Were the claimant to acquire the acreage necessary to lay out the appropriated streets it would have to pay the owners of the property acquired the market value of the street beds. It is this sum that the claimant seeks to recover from the State of New York. In the accompanying decision we have awarded the claimant the market value of the various street beds either as residential, commercial or industrial property in accordance with *306 the use to which the abutting property was devoted. The best available use for the land abutting Washington Avenue at or near Fuller Boad was for industrial and commercial development. The best available use for the remaining lands in the Washington Avenue-Bapp Boad area was residential development.
Claimant seeks consequential damages for loss of access to 50.506 acres formerly abutting Bapp Boad in the western part of the city. It contends such parcel was isolated because of the relocation of Bapp Boad and the appropriation of Parcels 116 and 102 by the State for Thruway purposes. Since these parcels were taken without any limitation of right of access it is the State’s contention that the claimant has a right of way of necessity over the said parcels. Defendant further contends although Bapp Boad is elevated in this area, access from the aforesaid 50.506 acres to Bapp Boad is physically attainable by the construction of a road approximately 170 feet long from the claimant’s property over a portion of Parcel 116 to the travelled portion of New Bapp Boad. Said road would have a maximum height of 10 feet and a maximum grade of 6%. Claimant’s property is located a minimum of 80 feet to a maximum of over 400 feet from relocated Bapp Boad. We find that the subject parcel does not have legal access to Bapp Boad (Robinson v. State of New York, 3 A D 2d 326) and have awarded consequential damages accordingly.
In arriving at our award herein with respect to the market value of the various parcels appropriated and the consequential damages to the 50.506 acres isolated we have given greater weight to the appraisal of the claimant’s experts for we regard such appraisals to be the more realistic and find the comparable sales introduced generally support the market value testified to by such experts.
We have made our award in an accompanying decision, filed herewith.