Henry W. Lengyel, J.
This is a claim for the appropriation of claimant’s land pursuant to section 30 of the Highway Law, which proceeding is described as Kingston-West Hurley S. H. *1022 No. 5173 Ulster County, Map No. 75-R-l, Parcels No. 106, 116 & 120. The aforesaid map and description were filed in the office of the Secretary of State on the 22nd day of June, 1961; in the office of the County Clerk of Ulster County on the 13th day of July, 1961 and personal service was made on the claimant on the 10th day of October, 1961. The claim was filed with the Clerk of the Court of Claims and the Attorney-General on the 21st day of September, 1961 and has not been assigned or submitted to any other court or tribunal for audit or determination. The court adopts the description of the appropriated property as shown on the map and description filed in the Ulster County Clerk’s office, a copy of which is attached to the claim and same is incorporated herein by reference. Claimant was the owner of the property by reason of a deed dated May 25, 1956 from Edwin J. Smedes and Jennie F. Smedes, grantors, to Arnold S. Rymkevitch, grantee, recorded in the Ulster County Clerk’s office on the 25th day of May, 1956 in Liber 966 of Deeds, page 508.
Before the appropriation the property consisted of 32.690± acres, bounded on the south by Route 28 in the Town and County of Ulster, State of New York. Said property is located about one mile west of the Kingston Thruway Exit. At the time claimant purchased the property it contained 45± acres of which 12.310 acres were sold for the Sky Top Motel. Of the remaining 32.690± acres approximately 24± acres were laid out in a real estate subdivision (Forest Hill) of 38 lots approximately one-half acre each, plus approximately 5 acres for roadways. According to the subdivision map (Exhibit 7), there was also 1.181 ± acres denominated cliff area. Subject property also included a 2±-acre lot subsequently used by claimant for his residence lot and 5.509± acres of undeveloped plateau land which also would lend itself to real estate subdivision use. When the court viewed the property, we were impressed with the attractiveness of the subdivision area and the quality of the residences built in the subdivision. Prior to the appropriation 8 lots in the subdivision had been sold by claimant. The court finds that the 30 lots remaining prior to the appropriation together with the improvements on Lot No. 7 had a fair market value of $121,200.
The highest and best use of claimant’s property prior to the appropriation was residential subdivision as set forth in the Forest Hill development plan and a limited commercial use, sale of bluestone shale, of the area denominated cliff area in Exhibit 7. The highest and best use of claimant’s property after the appropriation was residential subdivision.
*1023 The State appropriated a total of 2.239 ± acres of claimant’s land. Parcel 120 took 0.432± acres being the southerly portion of Lot Mo. 6 of the subdivision. Parcel 116 took 0.626± acres being the major portion of Lot Mo. 7 of the subdivision. Parcel 106 took 1.181 ± acres being the area denominated cliff area. The appraisers for the State and the claimant were relatively close in their appraisals of the before values of Lots Mos. 6 and 7 with improvements and the court has found the value of these particular lots plus improvements before the appropriation to be $9,200 and after the appropriation to be $700. The State’s appraiser and claimant’s appraisers followed different theories of appraisal for the 1.181±-acre taking and consequential damages resulting in a great variance in their damages, as to these items, i.e., State’s appraiser $7,350 and claimant’s appraisers $92,120.
Parcel 106 of 1.181± acres bordered the State highway right of way prior to the appropriation for a distance of 367.6± feet. To obtain a picture o.f this area one must visualize the travelled portion of the highway and usual shoulder at grade and the balance of the State’s right of way sloping sharply uphill to the boundary line of the claimant’s property. The uphill slope on the State’s right of way extended approximately 90 feet, rising to a height of approximately 20 feet at the claimant’s boundary line. Said slope continued to rise on claimant’s property to a height of about 100 feet at the south boundary lines of Lots Mos. 6 and 7 of the subdivision. Claimant was in the construction business and prior to the appropriation had started to remove shale from the hillside most of which he apparently used to fill lowland owned by him on the south side of Boute 28 and almost directly opposite subject property and some he sold to other parties. Claimant’s appraisers and attorneys arrived at what appears to the court to be a rather exotic theory of damages. They cite to the court the case of Hoffman v. State of New York (45 N. Y. S. 2d 8, 13, affd. 269 App. Div. 719) wherein it was stated: ‘ ‘ Among the rights of the owner of lands adjoining a highway are those of light, air, and access, regardless of where the title may be * * * She had access over this right of way to the pavement of the new highway for the entire distance that her lands fronted upon the new highway.” (See, also, Griefer v. County of Sullivan, 246 App. Div. 385, 386, affd. 273 M. Y. 515.) Starting from this basic premise of right of access, claimant then developed the theory that he, as a contractor, planned to excavate and use or sell the bluestone shale and bring the cliff area down to road grade. That he would then obtain permission from the State and remove its hill of shale which *1024 was about 90 feet long and up to 20 feet high thus providing claimant with 367.6± feet of grade level road frontage which claimant’s appraisers allocated a highest and best use as a service station or diner site and allocated a value of $40,370 plus a $15,000 enhancement for the bluestone shale or a total value for this 1.181±-acre cliff area of $55,370. We have no quarrel with the law as stated in the Hoffman ease (supra). However, we believe the Appellate Division in Robinson v. State of New York (3 A D 2d 326) developed the rule of reason to be applied to this general rule of law. In that case claimant’s land formed the boundary line of the State’s taking but was from 90 feet to 465 feet away from the travelled portion of the highway. The State contended the claimant, as an abutting owner, had a right of access to the highway which mitigated his claim for consequential damage. The court stated (p. 329): “We deem unrealistic in the extreme, and are constrained to disapprove, the holding that a landowner whose property is distant from the travelled portion of the highway more than 90 feet at the nearest point and some 465 feet at the farthest enjoys the privileges and conveniences of an abutting owner.”
This decision was followed in City of Albany v. State of New York (38 Misc 2d 300, 306) wherein it was stated: “ Claimant’s property is located a minimum of 80 feet to a maximum of over 400 feet from relocated Rapp Road. We find that the subject parcel does not have legal access to Rapp Road (Robinson v. State of New York, 3 A D 2d 326) and have awarded consequential damages accordingly.”
In the case at hand the shale cliff area was not only 90 feet removed from the travelled portion of the highway but also was 20 feet above grade of said highway. We, therefore, under the authority of the Robinson case (supra) refuse to follow the reasoning of the claimant. The State’s appraiser also considered that the claimant had road frontage on Route 28 but found a value of $5,900 of the land as enhanced by the shale. The State in its memorandum of law stated that ‘ ‘ while the claimant might be legally entitled to access to the highway, at the time of the appropriation he had no physical access for the reason that 90 feet in depth of the State’s property for the entire frontage was encumbered with a shale embankment.” We believe that the access rights of abutting owners must be resolved on the particular facts presented and where, as here, the abutting owner is so removed from the highway as to make obtaining access a tortuous and physically involved process that such abutting owner shall not be found to have access. There is no question that the 1.181± acres was primarily composed of blue- *1025 stone shale and was of considera.hie value. The State’s Location Plan and Profile indicated that road contractors were to use this material for embankment fill in another section of the Kingston Bypass. The court believes that the State grossly underestimated the value of the shale cliff, in which claimant had, at the date of appropriation, established a shale pit. The court finds a value of said 1.181±'acres, enhanced by the large deposits of shale of $16,000. In arriving at our decision in this respect, we have followed Berzal & Co. v. State of New York (8 A D 2d 886-887) wherein it was stated: “ The basic factor [of damages] is always the fair market value of the land as land, whether that factor he applied to the land actually taken or he employed in computation of the difference between the value of the land before the taking and that of any part remaining. It is obvious that market value may often he found to he enhanced by the existence upon the land of soil or other deposits having special or independent value upon severance, but the measure remains the value of the land and not that of its product or component. (See Matter of Huie, 1 A D 2d 500 * # * Sparkill Realty Corp. v. State of New York, 254 App. Div. 78, affd. 279 N Y. 656.) ”
Claimant further contended that the remainder of his property was consequentially damaged 30% or $36,750 by reason of the dirt, mud, dust, etc., which allegedly resulted from the construction work and the leveling of small mountains of shale both on subject property and those properties adjoining to the west. Apparently this work involved blasting which claimant contended created a condition which was not only unsightly but was actually hazardous to the residents of the subdivision. It was, therefore, stated at the trial that the desirability of the residential subdivision was seriously impaired by reason of this construction work; and, that if the whole property had been offered for sale during this period a purchaser would be entitled to a 25% to 30% decrease in market value. However, other than the flat statements of claimant’s appraisers that there had been a 25% to 30% consequential damage no credible evidence was offered at the trial to establish that claimant was materially impeded in the development of his residential subdivision. Even if such evidence had been produced it would have had to relate to a reasonably permanent condition which caused continuing damage to the remaining lands to he considered a consequential damage and not damage of a transitory nature such as was indicated. In Matter of Culver Contr. Corp. v. Humphrey (268 N. Y. 26, 36-37) the court stated: “ The Claimant relies on the rule that where a portion of a person’s property is condemned *1026 he is entitled to recover for so-called consequential damages to the remainder of his property by reason of the use of the portion acquired. The rule thus broadly stated is a fair one * * * But the claimant misconstrues the rule and the meaning of the term ‘ consequential damages ’ as used in condemnation proceedings. Not all damages which flow from the use to which the condemned property is put can be recovered in condemnation proceedings. It is only for the talcing by way of fee or easement that payment must be made in condemnation. If the property taken is to be used in such manner as permanently to interfere with or diminish the value of the remaining property # * * then the use to which the property taken is to be put must be considered in ascertaining the damages in the condemnation proceeding.”
Certainly, temporary interference with access or noise, dirt, mud, and blasting vibration is not such an interference as to permanently diminish the value of the remaining property. As was stated in Farrell v. Rose (253 N. Y. 73, 76): “ The inconvenience and damage which a property owner suffers from these temporary obstructions are incident to city life and must be endured. The law gives him no right to relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made. The law, however, does afford him a relief, if the city or a contractor interferes with the highway without authority; or, if acting legally, prolongs the work unnecessarily or unreasonably.” (See, also, Reis v. City of New York, 188 N. Y. 58, 69; Queensboro Farm Prods, v. State of New York, 5 A D 2d 967, affd. 5 N Y 2d 977.) Although not material to the decision of this claim, it is interesting to note that the noise, dirt, blasting, etc., which claimant refers to as allegedly causing consequential damage to the subdivision, would probably also have occurred if claimant had attempted to remove the shale cliff area as was theoretically discussed by his appraisers. One might be excused for speculating whether claimant would have removed this shale if such work would have or could have damaged the rest of his investment by 25% to 30%.
Claimant had suitable access to his property both before and after the appropriation.
The court finds that the fair and reasonable market value of the subject property before the taking was $147,700; that the fair and reasonable market value of subject property after the taking was $123,200; and, that the claimant, as a direct result of the taking, has been damaged in the amount of $24,500 and that there were no consequential damages.
*1027 Claimant received a partial payment from the State of $9,000.
As the contractors for the State entered claimant’s subject property on February 21,1961, the court finds a de facto appropriation on that date. Claimant is entitled to interest on the award from February 21, 1961, and the court finds that the 6-month interest provision of section 19 of the Court of Claims Act does not apply to the date of the de facto appropriation.
The claimant is awarded the sum of $24,500, less $9,000 partial payment, with interest from February 21, 1961 to the date of entry of judgment herein.
The award to claimant herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having any right or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway, or public or private right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer and railroad lines.