539 P.2d 611

**STATE of New Mexico ex rel. STATE HIGHWAY DEPARTMENT of New Mexico, Petitioner-Appellant,**

v.

**KISTLER–COLLISTER COMPANY, INC., Defendant-Appellee.**

**No. 10074.**

Supreme Court of New Mexico.

July 16, 1975.

Rehearing Denied Aug. 19, 1975.

222

Toney Anaya, Atty. Gen., Victor Henry Rothschild, III, SHD Asst. Atty. Gen., Santa Fe, for petitioner-appellant.

Modrall, Sperling, Roehl, Harris & Sisk, George T. Harris, Jr., Leland S. Sedberry, Jr., Bruce D. Black, Albuquerque, for defendant-appellee.

## OPINION

OMAN, Justice.

This is a case in which the New Mexico State Highway Department (Highway Department) condemned two strips of land fronting on intersecting Lomas and San Mateo Boulevards in Albuquerque. The defendant, Kistler-Collister Company, Inc. (Kistler-Collister) was the owner of these lands. The case was tried to a jury which awarded Kistler-Collister $250,000 in damages. Judgment was entered on the verdict and the Highway Department has appealed. We reverse and remand for a new trial.

The Highway Department relies upon several points for reversal. We shall consider only those we feel necessary to demonstrate reversible error on the part of the trial court and to perhaps prevent another appeal after retrial. Of course, failure to discuss any other points raised on appeal does not necessarily imply approval of the trial court's actions. We first consider the contention of the Highway Department that: "Frustration of future plans is a non-compensable element of damages."

The particular acts of the district court attacked under this point are: (1) the ad-

mission into evidence of architectural plans offered by Kistler-Collister showing a long-planned enlargement of the improvements on the property, (2) a refusal to strike the testimony of Kistler-Collister's expert witness on the issue of damages, and (3) the giving of an instruction to the jury permitting it to consider the plans for expansion and utilization of the property, along with all other evidence received, in making its determination as to the difference between the fair market value of the entire property immediately before the taking and the fair market value of the remainder thereof immediately after the taking.

Our basic law of eminent domain applicable upon a partial taking appears in N. M.Const., art. II, § 20, and in § 22–9–9.1, N.M.S.A.1953 (Supp.1973). N.M.Const., art. II, § 20, supra, provides: "Private property shall not be taken or damaged for public use without just compensation."

Section 22–9–9.1, supra, provides:

"*Measure of damage to remainder in partial condemnation.*—Notwithstanding provisions of the Relocation Assistance Act [22–9A–1 to 22–9A–16], in any condemnation proceeding in which there is a partial taking of property, the measure of compensation and damages resulting from the taking shall be the difference between the fair market value of the entire property immediately before the taking and the fair market value of the property remaining immediately after the taking. In determining such difference, all elements which would enhance or diminish the fair market value before and after the taking shall be considered even though some of the damages sustained by the remaining property, in themselves, might otherwise be deemed noncompensable. Further, in determining such values or differences therein, elements which would enhance or benefit any property not taken shall only be considered for the purpose of offsetting any damages or diminution of value to the property not taken."

N.M.U.J.I. 7.9, Civil (1966), relating to the determination of the value of property taken, is as follows:

"In determining the value of the property taken you will consider its location and the uses and purposes for which the property is suitable or adaptable, having regard not only to the existing conditions, but also to such uses as may be reasonably expected in the near future which would affect its present market value."

■ The property here in question is commercial property. The total development of this property for commercial purposes was conceived and the plans therefor drafted, at least in substantial part, by an architect employed by Kistler-Collister long before the taking by the Highway Department and even before the construction of the existing mercantile structure and other improvements on the property. The existing structure was so placed and so designed as to serve the initial needs of the Kistler-Collister retail mercantile outlet and to accommodate a large addition thereto. When finally completed, the additional building space was to be leased to other commercial tenants. Leases and options for leases on space in the proposed addition had been secured prior to the time it became apparent that condemnation of a portion of the property was imminent. We agree with the Highway Department that mere frustration of the owner's hopes or plans for the future is a noncompensable element of damages. *United States ex rel. T. V. A. v. Powelson*, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943); *United States v. Easement & Rt. of Way 100 Ft. Wide*, Tenn., 447 F.2d 1317 (6th Cir. 1971); 4 J. Sackman, Nichols' the Law of Eminent Domain, § 12.314 at 12–206 to 209 (Rev. 3d Ed.1974). However, we cannot agree that we are here concerned with damages for frustration merely because the development envisioned in the plans had not been fully consummated and the property had not been fully utilized for the uses and purposes for which it was clearly suitable and

adaptable. Compensation for frustration of future hopes or plans is not the same as compensation based on planned future uses for which the property is adaptable by reason of location, its state of improvement, or other special elements of value inherent therein.

In *State v. Pelletier*, 76 N.M. 555, 417 P.2d 46 (1966), we were "called upon to consider * * * whether planned uses or future possible uses contemplated when the property was acquired by the owner, and special elements of value incident to location, are proper considerations in arriving at value." Because of its peculiar location, the owner's appraiser assumed that the owner had purchased the property for use in a commercial venture. Under these circumstances, we held that it was "proper to receive evidence of value in which consideration was given by the appraiser to future plans for development, and the highest and best use to which the property could be put, but for which it had not been used in the past."

In the case now before us, we have property already developed for commercial uses with definite plans and provisions in the existing structure having been made for the future development of the property for these uses. It appears clear to us that the trial court properly received into evidence these architectural plans and the testimony of the appraisers relative thereto. The appraisers correctly considered these plans, and the consequent uses to which the property could be put, in arriving at their respective appraisals of the damages suffered by Kistler-Collister in the taking of a portion of its property. See in accord *United States v. 25.406 Acres of Land, Etc.*, 172 F.2d 990 (4th Cir. 1949); *United States v. 243.22 Acres of Land, Etc.*, 48 F.Supp. 177 (E.D.N.Y.1942); *Producers' Wood Preserving Co. v. Com'rs. of Sewerage*, 227 Ky. 159, 12 S.W.2d 292 (1928); *City of Orangeburg v. Buford*, 227 S.C. 280, 87 S.E.2d 822 (1955); *City of Pleasant Hill v. First Baptist Church*, 1 Cal.App.3d 384, 82 Cal. Rptr. 1 (Ct.App.1969); *Arkansas Louisiana Gas Co. v. Morehouse Realty Co.*, 126 So.2d 830 (La.Ct.App.1961); *City of St. Louis v. Paramount Shoe Mfg. Co.*, 237 Mo.App. 200, 168 S.W.2d 149 (1943); 4 J. Sackman, Nichols' The Law of Eminent Domain, § 12.3142(3) at 12–273 to 276 (Rev. 3d Ed.1974).

We find no merit in the Highway Department's contentions under its first point.

We next consider its claim that the trial court erred in refusing to admit into evidence two exhibits tendered for the purpose of demonstrating that Kistler-Collister could realize the consummation of its plans for expansion even after the taking, if the parking area were merely redesigned to utilize 90 degree angle parking rather than 60 degree angle parking in some places, and by reducing the width of the parking stalls from 10 ft. to 8½ ft. If Kistler-Collister's plans for the parking area were utilized, the floor space in the proposed building would have to be reduced by 9,800 square feet, because 49 parking spaces would be lost, since a city ordinance requires one parking space for every 200 square feet of floor space. By utilizing the parking space design contained in the exhibits offered by the Highway Department, the proposed improvements to the building could be fully accomplished according to plans, as no parking spaces would be lost. The projected loss of floor space in the proposed building would amount to a substantial reduction in its value, and constituted a large part of the overall damages attributed to the taking by Kistler-Collister's witnesses.

■ As above stated, it was proper for the jury in fixing damages to consider the plans of Kistler-Collister for the development of its property. They constituted evidence of a use to which the property could reasonably be put. However, the jury, in its consideration of these plans, was not bound to either fully accept or fully reject them. The plans for the parking area did not immutably determine that the plan for the construction of the additional building

must be altered and the space therein reduced. The jury was entitled to have presented to it for its consideration alternate plans for the further development of the property for commercial purposes, as well as evidence of other uses for which it was suitable or adaptable, in determining the before and after fair market value of the property. The development of the property for commercial purposes was not limited to Kistler-Collister's plans for such development.

█ The ultimate issue for the jury's determination was the damage sustained by Kistler-Collister, and this was the same as the difference between the fair market value of the entire property before the taking and the fair market value of the remaining property immediately after the taking, considering all elements which would enhance or diminish these before and after fair market values. Section 22–9–9.1, supra. Clearly, a redesign of the parking area and the utilization of this area by reducing the width of the striped stalls from 10 ft. to 8½ ft. was an element to be considered in determining the difference between the before and after fair market values. There was evidence that several comparable commercial establishments in the immediate area used 90 degree as well as 60 degree angle parking stalls ranging in width from 8 ft. to 10 ft., and that the change from 10 ft. to 8½ ft. stalls could be lawfully effected under the applicable city ordinance.

The tendered exhibits were plats or diagrams of the property in question showing the improvements and proposed improvements thereon, but with the parking area redesigned and divided into stalls of 8½ ft. rather than 10 ft. wide. One of the exhibits portrayed the property prior to the taking by condemnation and the other portrayed the remainder of the property after the taking. These exhibits and the testimony and explanation thereof would certainly have thrown light upon the issue of damages. Consequently, they were relevant. *Lopez v. Heesen,* 69 N.M. 206, 365 P.2d 448 (1961); *State v. Thurman,* 84 N. M. 5, 498 P.2d 697 (Ct.App.1972). Although not applicable to this case, see Rule 401, New Mexico Rules of Evidence [§ 20–4–401, N.M.S.A.1953 (Repl. Vol. 4, Supp.1973)] for a further definition of relevant evidence. Since they were relevant to the principal issue in the case, the exhibits should have been admitted. See *Holloway v. Evans,* 55 N.M. 601, 238 P.2d 457 (1951). This was particularly so in view of the fact that Kistler-Collister was permitted to introduce evidence to show that the effect of the taking was to substantially reduce the rental area of the proposed building.

█ In its answer brief, Kistler-Collister describes these exhibits as "pictorial blueprints" and treats them as "photographs." It urges that they were properly admissible in evidence only in connection with the testimony of a witness with competent knowledge of the circumstances surrounding their preparation. Although the exhibits were not physically prepared by the witness who identified them, they were prepared at his request and he participated in their preparation. No question was raised as to the accuracy of their representation or portrayal of that which they purportedly represented and demonstrated. No further foundation for their admissability was necessary. See 3 S. Gard, Jones on Evidence, § 15.10 (6th Ed.1972). The authentication or verification of photographs prerequisite to their admission into evidence may be made by the photographer or by any witness whose familiarity with the subject matter represented thereby qualifies him to testify as to the correctness of the representation of the objects or scenes which they portray. 3 S. Gard, Jones on Evidence, supra.

█ It is true that the sufficiency of the foundation or authenticating evidence is a matter largely within the discretion of the trial court, but here there can be no question as to the sufficiency of the foun-

dation and no question was raised as to the accuracy of the exhibits.

■ The second objection made to the admission of the exhibits was that they were in violation of § 22–9–9.1, supra, in that they ignore the before and after standard. The fallacy with this objection is that the before and after fair market values for the property cannot be controlled by the striping of parking stalls or by a proposed plan for use of a parking area. The jury was fully apprised of the existing striping and of Kistler-Collister's future plans for the use of the parking area. However, the jury was not obliged to accept this parking plan as the only manner in which the area could be utilized for parking, nor was it obliged to find that the reduction in the number of 10 ft. wide parking stalls, by reason of the taking, would necessarily require a reduction in the size of the proposed building.

■ The final objection made to the exhibits was that they would mislead the jury. We fail to understand how the jury could have been misled. The purpose of a trial of factual issues is to arrive at the truth, insofar as possible, and the exhibits could only have aided the jury in determining the true before and after fair market values. The jury was obliged to determine those values in order to arrive at the damages to which Kistler-Collister was entitled under the law. The fact that the exhibits demonstrated a plan for the use of the parking area different from that proposed by the plans of Kistler-Collister did not make these exhibits misleading or confusing. They are easily understood. Nor were these exhibits merely supplemental to and cumulative of oral testimony, as is urged on this appeal.

The trial court erred in refusing the admission into evidence of these exhibits.

The final point we consider on this appeal is a claim that the trial court erred in permitting the jury to consider evidence as to damages or loss caused to the business of Kistler-Collister by reason and during the period of construction. Over objection, the trial court admitted oral testimony as to the extent of such loss and photographs taken during construction showing interference with the access to Kistler-Collister's property. It also instructed the jury that the jury could properly consider the loss of income and extra expense caused Kistler-Collister by the Highway Department's construction of the street improvements insofar as they would affect the market value of the property before and after the taking.

■ It is the law of New Mexico, regardless of what other jurisdictions have held, that a condemnee may not recover damages by way of expenses or loss of business for temporary inconvenience, annoyance or interference with access occasioned by construction, unless the period of construction was unduly long or the conduct of the condemnor causing the loss was unreasonable, arbitrary or capricious. *Hill v. State Highway Commission*, 85 N.M. 689, 516 P.2d 199 (1973). There was no evidence which would warrant a finding that the period of construction was unduly long or that the contractor or Highway Department acted unreasonably, arbitrarily or capriciously in accomplishing the construction.

In *Rymkevitch v. State,* 42 Misc.2d 1021, 249 N.Y.S.2d 514 (Ct.Cl.1964), a case relied upon by us in *Hill v. State Highway Commission, supra,* the New York court stated:

"Certainly, temporary interference with access or noise, dirt, mud, and blasting vibration is not such an interference as to permanently diminish the value of the remaining property. As was stated in *Farrell v. Rose,* 253 N.Y. 73, 76, 170 N.E. 498, 499, 68 A.L.R. 1505:

" 'The inconvenience and damage which a property owner suffers from these temporary obstructions are incident to city life and must be endured.

The law gives him no right to relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made. The law, however, does afford him a relief, if the city or a contractor interferes with the highway without authority; or, if acting legally, prolongs the work unnecessarily or unreasonably.' See also, *Reis v. City of New York*, 188 N.Y. 58, 69, 80 N.E. 573; *Queensboro Farm Products, Inc. v. State of New York*, 5 A.D.2d 967, 171 N.Y.S.2d 646, aff'd 5 N.Y.2d 977, 184 N.Y.S.2d 844, 157 N.E.2d 719."

Although the trial court instructed that it was proper for the jury to consider loss of income and extra expense caused Kistler-Collister only to the extent that they would affect the market value of the property before and after the taking, this could not cure the error in admitting this evidence. In the absence of evidence that the period of construction was unduly long or that the conduct of the contractor or Highway Department was unreasonable, arbitrary or capricious, the evidence as to loss or damage by reason of construction itself merited no legal recognition, and the effort to relate it to the before and after market values gave it no such recognition. See *Hill v. State Highway Commission, supra; Masheter v. Yake*, 9 Ohio App.2d 327, 224 N.E.2d 540 (1967); 5 J. Sackman, Nichols' The Law of Eminent Domain, § 16.101[1] (Rev. 3d Ed.1974).

The trial court erred in admitting evidence as to damages or loss resulting from temporary inconvenience, annoyance or interference with access occasioned by the actual construction of the street improvements.

The judgment should be reversed and the cause remanded for a new trial.

It is so ordered.

McMANUS, C. J., and MONTOYA, J., concur.