The STATE of South Dakota, Acting By and Through the DEPARTMENT OF TRANSPORTATION AND the BOARD OF TRANSPORTATION FOR the DIVISION OF HIGHWAYS, Plaintiff and Appellant,

v.

BAKEN PARK ENTERPRISES, INC., Equitable Life Assurance Company, Jack Devereaux, United States of America, acting through the Small Business Administration, S. S. Kresge Company and Socony Vacuum Oil Company, Defendants and Respondents.

No. 11816.

Supreme Court of South Dakota.

Reassigned Jan. 6, 1977.

Decided Aug. 30, 1977.

Camron D. Hoseck, Asst. Atty. Gen., Pierre, argued the cause for plaintiff and appellant; William J. Janklow, Atty. Gen., Carl W. Quist, Asst. Atty. Gen., on the brief.

Joe Butler of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, argued the cause for defendant and respondent Baken Park Enterprises, Inc.; David F. Sieler of Sieler, Sieler & Trimble, Rapid City, on the brief.

WOLLMAN, Justice (on reassignment).

The state appeals from a judgment entered in this condemnation action that took some 9,235 square feet of defendant Baken Park Enterprises, Inc.'s, shopping center property for a street improvement project in Rapid City.* Because we agree that the trial court should have granted the state's motion to strike certain testimony and should have given the state's proposed instruction that the jury should not consider loss of business or loss of profits during the period of construction in fixing the amount of defendant's damages, we reverse and remand for new trial.

One of defendant's expert witnesses testified on direct that in arriving at the after-taking value of the property he had taken into account the fact that accessibility to the property would be more difficult during the period of construction as well as afterwards. The state then interrupted the direct testimony with a query whether the witness had allowed for the improper access during the period of construction in arriving at his opinion on the question of damages, to which the witness replied that although he had not specifically done so he had recognized that there was going to be a period of construction and that as a result defendant's property was "more speculative." He acknowledged that he had increased his rate of capitalization and that some part of that increase would be allocated to the difficulty that created rent loss. The state thereupon objected to the witness' testimony and moved that it be stricken. The objection was overruled.

At the close of the case the state proposed the following instruction:

"You are instructed that you may not consider loss of business or loss of profits based on interruption of business during time of construction of the highway improvement in arriving at damages to be awarded to the landowners."

Upon defendant's objection, the trial court refused to give the proposed instruction, even though a few moments earlier the court had acknowledged that the law was in accord with the state's position on the matter.

■ Defendant contends that the state injected the element of loss of profits into the case by its cross-examination of the witness and therefore will not be heard to complain of any alleged error resulting from the witness' testimony regarding loss of profits as an element of damages. This argument will not wash, however, because the state was entitled to probe the basis of the witness' before and after values, otherwise it would have no way of knowing whether the elements that went into determining those values were properly compensable. Cf. *State Highway Comm. v. Anderson*, S.D., 242 N.W.2d 674.

■ We conclude that the losses incurred by a property owner in the way of loss of income and profits because of temporary interference with normal routes of ingress and egress, together with other inconveniences attendant upon the work in progress, are not compensable items of damage resulting from a construction project such as that involved in the instant case. See *Dept. of Public Works v. Ayon*, 54 Cal.2d 217, 5 Cal.Rptr. 151, 352 P.2d 519; *Blank v. Iowa State Highway Comm.*, 252 Iowa 1128, 109 N.W.2d 713; *Dept. of Highways v. Ray*, Ky., 392 S.W.2d 665; *Lybarger v. Dept. of Roads*, 177 Neb. 35, 128 N.W.2d 132; *State ex rel. Highway Dept. v. Kistler-Collister Co., Inc.*, 88 N.M. 221, 539 P.2d 611; 27 Am.Jur.2d Eminent Domain

* The other defendants did not participate in the trial and are not involved in this appeal.

§ 285; 2A Nichols on Eminent Domain (3d Ed.) § 6.4442(2). Although it is true that in some of the cases that have adopted this rule there was no actual taking of property, one who loses a portion of his property to the condemning authority does not, ipso facto, suffer any greater inconvenience or loss of income and profits than one who does not.

There remains the question whether the trial court's failure to strike the expert's testimony or to give the requested instruction was sufficiently prejudicial to warrant the reversal of the judgment. Defendant's expert witness testified to a difference in before and after taking value of $115,000. Two of defendant's three stockholders gave testimony to the effect that the difference between the before and after value amounted to $150,000. The state's expert witness testified to a difference of $37,000. The jury returned a verdict in the amount of $125,150.

Although we do not set aside judgments because of every error that occurs at trial, *Dwyer v. Christensen,* 77 S.D. 381, 92 N.W.2d 199, *Limmer v. Westegaard,* S.D., 251 N.W.2d 676, we cannot say with any degree of confidence that the result here would have been the same had the objected-to testimony been stricken or the proposed instruction been given. The testimony was of special significance because of the fact that twenty-two of defendant's thirty-one tenants were occupying space in the shopping center under percentage leases.

We conclude, then, that once the opinion of defendant's expert was infected with the noncompensable elements of damages flowing from the loss of access during construction, the state's motion to strike his testimony should have been granted, or at the very least the corrective instruction given.

Other errors alleged by the state are either mooted by our decision or are without merit.

The judgment is reversed and the case is remanded for new trial.

DUNN, C. J., and MORGAN, J., concur.

ZASTROW and PORTER, JJ., dissent.

PORTER, Justice (dissenting).

I

The north boundary of the Baken Park Shopping Center property abuts west St. Joseph street, and the east boundary abuts Mountain View Road. In order to widen these streets, the state, by condemnation, took a six foot wide strip of land within the north boundary of the shopping center, and a twelve foot wide strip of land within the east shopping center boundary.

Because of the taking, the shopping center parking lot had at least 35 fewer customer parking spaces, according to the testimony of one of the owners of the shopping center property. The owner further testified, on direct examination, without objection:

"Q  What is the effect of parking spaces on a shopping center? What do they mean to a shopping center?

A  If you don't have parking spaces, you don't have customers.

\*      \*      \*      \*      \*      \*

Q  In other words, if you can't get the people onto the lot into the center you don't make any money, do you?

A  That's right.

Q  How many of the stores and business places within the center are on what is known as a percentage lease?

A  Practically all of them except the offices, insurance offices, doctors.

\*      \*      \*      \*      \*      \*

Q  When they don't do good business, you don't do good business, isn't that right?

A  That's right."

From this evidence, the jury could find that from the date of taking, the rents under the percentage leases would be adversely affected because of a reduction of business at the shopping center. This would be a factor which the jury could properly take into account in considering whether there was severance damage to the tract remaining. *State Highway Commis-*

*sion v. Bloom*, 77 S.D. 452, 93 N.W.2d 572 (1958); See also *Pierpont Inn, Inc. v. State*, 70 Cal.2d 282, 74 Cal.Rptr. 521, 449 P.2d 737 (1969). Loss of the parking spaces was not temporary. It was permanent from the date of taking. The "loss of business * * based on interruption of business during time of construction" caused by the loss of the parking spaces was a factor relevant and competent on the issue of severance damage, since a willing buyer in the open market, would consider that in fixing the price he would pay for the tract remaining. Although damages are fixed as of the date of taking, the jury cannot do this in a vacuum. As to severance, they must consider the permanent effect of the taking upon the tract remaining, in order to answer the ultimate question, namely, the total amount of damage sustained as of the date of taking.

The proposed instruction would require the jury to ignore the effect of the loss of parking "during time of construction of the highway improvement." In this respect, it was not a correct statement of the law applicable to this case, and was therefore properly refused by the trial court. *State Highway Commission v. Bloom*, 77 S.D. 452, 460–61, 93 N.W.2d 572, 577 (1958); *Knutsen v. Dilger*, 62 S.D. 474, 483, 253 N.W. 459, 464 (1934).

## II

"A motion to strike must be directed with precision to the testimony sought to be stricken, particularly where a part only of the testimony is objectionable. Where it appears that the opinion of a valuation witness is based wholly or chiefly upon improper considerations or incompetent and inadmissible matters, his testimony may be stricken. But where his opinion is based upon considerations which are proper as well as those which are not, the motion to strike may, in the sound exercise of the court's discretion, be denied and the matter left to the jury to determine the weight to be given the testimony." *San Bernardino County Flood Control Dist. v. Sweet*, 255 Cal.App.2d 889, 901, 63 Cal.Rptr. 640, 648 (1967). Under this rule, the trial court did not err in denying the state's motion to strike the testimony of the land owner's expert witness, Smith.

Smith, 52, holds a Bachelor of Arts degree, with a major in architecture, and has been in the appraisal field since 1950. A Minneapolis resident, he has testified many times as an expert real estate valuation witness in Minnesota, and recently, in several other states, including half a dozen times in Rapid City. He testified that realty may be appraised using three different approaches: (1) "cost"; (2) "market or direct sales"; and, (3) "income." He considered all three, but primarily used the "income" approach. His testimony leading up to the motion to strike is footnoted.[1]

The motion to strike went to the theory that Smith's "income" approach testimony

---

1. SMITH—DIRECT EXAMINATION

QUESTION BY [LANDOWNER]:

Q Now, just one last question, Russ. You have observed the shopping center both before and after the taking, have you not?

A Yes.

Q You are aware of having viewed the construction work that is in progress at the present time?

A Yes

Q Just generally would you itemize the different things that you see that have been changed as a result of the taking there.

A Yes. First there is a reduction in the area of the overall property. The highway department calculations as I read their plans are 9,235 square feet that they have acquired.

There is a grade change in the Main Street road construction or at least the road as relates to the shopping center is a little different, making the entrances different.

There is a reduction in the area of the Mobil Oil property or property occupied by Mobil Oil which will, as I understand it, the line of taking on Mountain View Road is about the center line of the existing driveway area of the outside drive area and—there will be required additional work of redesign of the parking lot for parking spaces, restriping [sic] certain areas of the parking lot, probably purchase of new bumper guards, bumpers for the parking, and those areas have been—those are the costs and losses in rent and things like that. There is also as of the date of taking this property becomes more speculative as to value, as to what will happen after the taking, more difficult accessa-

became incompetent because he considered difficult access during construction and there was no way for the jury to take this factor out of the specific damage figure he gave. Because this was an "access" case involving, additionally, a partial taking, so that the jury could properly consider accessibility during construction, as it related to the permanent loss of parking spaces, with consequent reduced accessibility to the shopping center stores, it is not at all clear from the footnoted testimony that Smith based his *ultimate* "income" opinion materially on temporary construction inconvenience suffered by all members of the general public, alike. Although coming after denial of the motion, Smith gave further testimony in explanation.[2] Moreover, the state did not, by further cross-examination, make more precise the essentially ambiguous answers given by Smith, on which the motion to strike is based [footnote 1, supra]. Smith's before taking value of the property was $3,235,000 under the "cost" approach, but $3,180,000 under the "income" ap-

proach. He used the lower figure in computing net damages sustained by reason of the taking.

Under this record the trial court did not err in denying the motion, which can be read as requesting the court to strike *all* testimony of the witness.

For the reasons given, I would affirm the judgment.

I am authorized to state Justice ZAS-TROW joins in this dissent.

bility [sic] to the property, certainly during the construction period and—

[STATE]: Excuse me a minute. Are you saying that you allowed damages for the improper access during the construction of highway improvement in your opinion of damages?

THE WITNESS: Well, not specifically other than recognizing that there is going to be a construction period, and that their property is more speculative.

[STATE]: Is this reflected in your figure of damages?

THE WITNESS: Well, I have increased my rate of capitalization and I guess there is some—probably some part of that would be allocated to the difficulty that created rent loss and—

[STATE]: On the basis of that, Your Honor, I am going to object and move to strike his testimony.

**2.  SMITH—DIRECT**

QUESTION BY [LANDOWNER]:

Q  Now, having been involved in the shopping center business, how important is parking to you?

A  Well, certainly in an outlying shopping center, it is an absolute must because you can't live without parking spaces.

Q  Basically, then, any limitation of your parking would hurt you; is that correct?

A  Unless you have—well, yes, that's correct.

Q  Also your accessability [sic] to that parking is important, is it not?

A  Yes.

Q  For instance, if you were right next to an interstate highway where there was a fence in between there and nobody could get on your property, it wouldn't mean a thing, would it?

A  No.

Q  If I have understood your testimony correctly what you have considered is that this highway once it is constructed is going to make it more difficult to get into Baken Park than before; is that correct?

A  It's very likely that it will certainly.

Q  The wider the street, the faster the traffic, is that a good rule of thumb?

A  It's a good general statement.

Q  In effect what they are doing is they are widening the street?

A  That is my observation.

Q  And the fewer people you can get into the park the lower the income and the lower the value?

A  Anytime you have got restriction or makes it more difficult for the housewife in particular to get into a shopping center or parking area, it reduces its desirability.