This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **NO. 34,301**

**DOMINIC MARTIN MONTOYA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Chief Judge.**

{1}     Defendant Dominic Montoya admits that he killed Adam Avalos (Victim) in prison but seeks reversal of his second degree murder conviction, contrary to NMSA 1978, Section 30-2-1(B) (1994), on the grounds that (1) the prosecutor improperly asked Defendant on cross-examination whether he had a prior felony conviction for murder, and the jury considered this "extraneous evidence" during deliberations; (2) the admission of another inmate's phone call identifying Defendant as the killer lacked an adequate foundation, was inadmissible hearsay, and violated Defendant's right to confrontation; and (3) Defendant's trial counsel was ineffective. We affirm.

**BACKGROUND**

{2}     In April 2006 a grand jury indicted Defendant for first degree murder, contrary to Section 30-2-1(A)(1); possession of a deadly weapon or explosive by a prisoner, contrary to NMSA 1978, Section 30-22-16 (1986); and tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003). For reasons not relevant to this appeal, Defendant's trial began in June 2014. The following undisputed facts are derived from the trial transcript.

{3}     Defendant was incarcerated at the Doña Ana County Detention Center (DACDC) when the homicide occurred. On April 2, 2006, at about 8:00 p.m., a DACDC officer observed Defendant sitting on a chair covered in blood. The officer called a "code Mary," or medical emergency, during which time the prison was locked down. The officer had last seen Defendant without bloody clothes thirty to forty

2

minutes earlier. Victim's body was discovered in the shower with a gash across his neck and scratches or blood on his chest. A razor was found five or six feet from Victim's body. The autopsy revealed that the cause of death was multiple blunt force and sharp force injuries.

{4} At trial the State sought to call Claudio Castaneda as a witness. Castaneda had been an inmate at DACDC when the homicide occurred. He refused to testify, and the State moved to introduce a recorded phone call Castaneda made at 7:59 p.m. on April 2. Defense counsel objected on foundation, hearsay, and confrontation grounds. The district court found that Castaneda was unavailable, overruled Defendant's objection, and allowed the recording to be admitted into evidence, finding that it had a "sufficient indicia of reliability." Before the recording was played to the jury, DACDC's phone call custodian testified that his job was to ensure that inmate phone calls get recorded and explained that "[e]ach inmate has a different ID when they get to the jail [that is] tied to their PIN to use the phone," which is associated with the inmate's password. He also testified that computerized call records show the inmate ID used to make the call, the duration of the call, and the number called. In addition, he acknowledged that it is common practice for inmates to share their PIN numbers. The following is the complete transcript of the phone call:

    [Caller:]    Hey, babe, guess what?
    [Receiver:]  What?
    [Caller:]    Dominic just killed somebody.

3

[Receiver:] Are you F'g serious?

[Caller:] Yeah, Babe. He cut him up and everything.

[Receiver:] Really?

[Caller:] I swear to God.

[Receiver:] Son of a bitch. Like, he really killed him or he just hurt him bad?

[Caller:] No. He killed him. Slit his throat open and showed me everything.

[Receiver:] He showed you?

[Caller:] Yeah, babe. Yeah, baby. And I'm so sorry. You okay?

[Receiver:] Yeah, I'm all right. Fuck, man. That guy is fucking crazy, Claudio.

[Caller:] I know, Babe. I think it's, like, beating the shit out of somebody, but doing it like that, goddamn.

[Receiver:] And they haven't locked you guys down yet?

[Caller:] No. They're barely finding out.

[Receiver:] Really. Did you know the guy?

[Caller:] Yeah, yeah, yeah. Check what they want.

[Receiver:] I don't want you to be there no more, babe. I don't want you to be in there.

[Caller:] I don't want to be here. What did he say?

. . . .

[Caller:] No, the C.O.'s are coming now.

[Receiver:] Are they?

[Caller:] Yeah, they're going to lock us down, babe.

[Receiver:] Are they?

[Caller:] Yeah, I probably won't be able to talk to you for a couple of days, mija.

[Receiver:] Okay. Baby I love you, and I'll be thinking of you, okay?

[Caller:] Okay. I love you, mija.

[Receiver:] Call me as soon as you can. Claudio, keep it together.

[Caller:] They told me to hang up, babe. I got to go. Okay.

[Receiver:] Okay.

[Caller:] I love you, mija.

[Receiver:] I love you too.

[Caller:] Bye.

4

{5}     Defendant elected to testify in his own defense. On direct examination, Defendant discussed various tragic events that happened in his life. Defense counsel asked Defendant if he had two different felony convictions and Defendant answered "yes" and stated he was serving around seventy years. Also on direct, Defendant admitted he had the razor and fought with Victim in the shower but said he blacked out during much of the incident. Defendant further testified that he had no plans to hurt Victim, but was upset because he recently broke up with his girlfriend and "just exploded" after Victim said, "Fuck that bitch. She ain't worth it."

{6}     On cross-examination, the following exchange occurred between Defendant and the prosecutor:

| [Prosecutor:] | [Y]our attorney . . . indicated that you were in prison; is that right? |
| [Defendant:] | Yes. |
| [Prosecutor:] | And that you had been in prison for a conviction of felony offenses; is that correct? |
| [Defendant:] | Yes. |
| [Prosecutor:] | One of those felony offenses was a murder; is that correct? |

Defense counsel objected before Defendant answered on the ground that asking whether Defendant had a prior conviction for murder was "highly prejudicial." The district court sustained the objection and "admonish[ed] the State not to bring up the [name of the] prior convictions, just the fact that he has two prior felony convictions." The State did not bring up the murder conviction by name again. Defense counsel did

not seek a mistrial or curative instruction or otherwise object to the court's handling of the matter. Later, during cross-examination, Defendant asserted, "I don't think this case is about whether I killed him or not. I'm pretty sure the jury and everybody knows. I know I killed [Victim]."

{7}     Two clinical psychologists that were qualified as expert witnesses testified at trial. Dr. Eric Westfried, who evaluated Defendant in 2009, testified for the defense and discussed Defendant's various psychiatric disorders. Dr. Westfried opined that Defendant experienced a "full blown panic attack" at the time of the homicide and that in his "opinion, at a reasonably scientific level of certainty, . . . [Defendant's] anxiety was at a panic level and that he was not in control of his feelings, his thinking nor his behavior."

{8}     Dr. Ned Siegel, who evaluated Defendant in April 2014, testified for the State during its rebuttal. Dr. Siegel opined that Defendant's awareness of his surroundings indicates some level of control and stated, "It is my opinion that he was not experiencing a psychosis at [the time of the homicide,] nor was he experiencing a tangible element that would rob him of the ability to form specific intent."

{9}     The jury was given a step-down instruction for which it could find Defendant guilty of first or second degree murder. The jury also received insanity instructions that, in order to find Defendant guilty of either first or second degree murder, it was required to find, in relevant part, that "[D]efendant was sane at the time the offense

was committed . . . [and] was not suffering from a mental disease or disorder at the time the offense was committed to the extent of being incapable of forming an intent to take away the life of another."

{10} During jury deliberations, the jury sent the following note to the district court: "[The] prosecuting attorney stated that [Defendant] had a previous felony murder. Were we to disregard this[?]" After consulting with counsel, the judge simply sent a note back to the jury that said, "yes." Neither the State nor defense counsel objected or requested a mistrial or additional curative instructions. In fact, when asked whether he had a problem with the judge simply saying "yes," defense counsel answered, "No sir."

{11} The jury found Defendant guilty of second degree murder and possession of a deadly weapon by a prisoner. Defendant appeals.

**DISCUSSION**

**The Prosecutor's Question**

**1. Preservation**

{12} At the outset, we observe that Defendant's arguments regarding the prosecutor's question concerning the prior murder conviction were not preserved. Rule 12-321(A) NMRA provides, "To preserve an issue for review, it must appear that a ruling or decision by the [district] court was fairly invoked." In particular, "a defendant must make a timely objection that specifically apprises the [district] court

7

of the nature of the claimed error and invokes an intelligent ruling thereon." *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 (internal quotation marks and citation omitted).

{13} Here, defense counsel timely objected to the prosecutor asking Defendant if he had a prior felony conviction for murder on the grounds that the question was "highly prejudicial." The district court *sustained the objection* and defense counsel did not seek a mistrial or a curative instruction at any point as a result of the prosecutor's question. Any potential error could only arise from Defendant's failure to seek a mistrial or a curative instruction after the district court sustained the objection to the State's question about the prior felony conviction. *See State v. Johnson*, 2010-NMSC-016, ¶¶ 52-55, 148 N.M. 50, 229 P.3d 523 (addressing a defendant's unpreserved failure to move for a mistrial and the subsequent review for error).

**2.     Standard of Review**

{14} Defendant urges us to employ the plain error rule, however, as we explain, plain error is not the proper standard of review in this context. The doctrine of plain error applies specifically to evidentiary matters and permits a court to "take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved." Rule 11-103(E) NMRA. Under Rule 11-103(A), plain error may exist for evidentiary matters that admit or exclude evidence. *See State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071 (clarifying that the plain error rule applies not

8

only to evidentiary rulings but also to situations where evidence was admitted without being subject to a district court ruling).

**{15}** It would be improper to apply plain error review here. No evidence of Defendant's prior murder conviction was admitted via a ruling or otherwise. As Defendant concedes, questions posed by lawyers to witnesses are not evidence. *Cf. State v. Sanchez*, 1974-NMCA-107, ¶ 4, 86 N.M. 713, 526 P.2d 1306 (observing that improper prosecutorial comments are not reviewed for plain error). Additionally, the district court sustained defense counsel's objection to the question, and Defendant does not contend that the exclusion of testimony was in error. Accordingly, we perceive no basis to use plain error review.

**{16}** Rather, we review for fundamental error because no evidentiary matter is contested, and Defendant did not preserve his arguments below. The appellate courts exercise discretion to adopt the fundamental error exception "very guardedly" and will use it "only under extraordinary circumstances to prevent the miscarriage of justice[.]" *State v. Silva*, 2008-NMSC-051, ¶ 13, 144 N.M. 815, 192 P.3d 1192 (internal quotation marks and citations omitted), *modified on other grounds by State v. Guerra*, 2012-NMSC-027, ¶ 16, 284 P.3d 1076. Fundamental error only occurs in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633.

## 3.   Impeachment

{17}   Rule 11-609(A)(1)(b) NMRA provides that a defendant's prior felony convictions may be admitted into evidence to attack the defendant's character for truthfulness if the defendant is a witness and "if the probative value of the evidence outweighs its prejudicial effect to that defendant[.]" Although "convictions for the same crime should be admitted sparingly . . . we have held that evidence of a prior offense is not prohibited for impeachment purposes solely on the basis of its similarity with the presently charged crime." *State v. Trejo*, 1991-NMCA-143, ¶ 12, 113 N.M. 342, 825 P.2d 1252; *see id.* ¶¶ 1-3, 18 (holding that the defendant's prior felony convictions for attempted sexual penetration and false imprisonment were properly admitted to impeach the defendant at trial for attempted sexual penetration and false imprisonment); *see also State v. Coca*, 1969-NMCA-013, ¶ 4, 80 N.M. 95, 451 P.2d 999 ("The State may establish by the accused the fact of a prior conviction and the name of the particular felony."). However, because of the tendency for such questioning to prejudice the defendant as illegitimate propensity evidence, "it is the [district] court's responsibility to determine when cross-examination should be limited because the legitimate probative value on the credibility of the accused is outweighed by its illegitimate tendency, effect or purpose to prejudice him." *Coca*, 1969-NMCA-013, ¶ 5. Nonetheless, prejudicial impact by itself does not render evidence of a prior

10

felony conviction inadmissible. *State v. Hall*, 1987-NMCA-145, ¶¶ 26-28, 30, 107 N.M. 17, 751 P.2d 701.

{18} Defendant argues that, "[t]he prosecutor's asking of whether [Defendant's] prior conviction was for murder was improper[,]" and cites a number of out-of-state cases. We hold, however, that any error here was not fundamental and that we can resolve this issue under New Mexico law.

{19} While we generally agree with the State that "there is no blanket prohibition against impeaching a testifying defendant with evidence of a prior [felony] criminal conviction[,]" we note that our case law strongly suggests that it was error for the prosecutor to ask the question because information that a criminal defendant has a prior conviction for murder "invites the impermissible inference that, because he had killed in the past, it is more likely that he committed [the] murder" he is currently on trial for. *State v. Roybal*, 2002-NMSC-027, ¶ 26, 132 N.M. 657, 54 P.3d 61; *see id.* ¶¶ 13, 28-29 (analyzing an ineffective assistance of counsel claim and holding that, where evidence of the defendant's involvement in a prior killing was actually admitted at trial through a taped confession of another party, the defendant did not demonstrate actual prejudice because there was significant evidence of his guilt in the present trial).

{20} However, any error that occurred here was not fundamental error. First, there was no evidence admitted at trial that Defendant had a prior murder conviction. The

11

prosecutor asked Defendant if one of his prior felonies was for murder, but Defendant never answered, and no testimony to that effect was admitted. Second, Defendant does not argue, and there is no indication in the trial transcript, that the State persisted in raising the prior murder conviction after the district court admonished the State. *See State v. Sosa*, 2009-NMSC-056, ¶ 31, 147 N.M. 351, 223 P.3d 348 ("[O]ur appellate courts have consistently upheld convictions where a prosecutor's impermissible comments [during closing arguments] are brief or isolated."). Third, we note that the district court's curative instruction to the jury—that it was to disregard any reference to Defendant's prior murder conviction—is presumed to have cured any prejudicial effect. *But see State v. Armijo*, 2014-NMCA-013, ¶¶ 4-5, 9-10, 316 P.3d 902 (explaining that generally a prompt curative instruction cures any potential prejudice, but where "inadmissible testimony [was] intentionally elicited by the prosecution," the State repeatedly sought improper opinion testimony from a lay witness after the court had sustained the defendant's objection three times, and the witness actually answered the improper question, that the court's curative instruction did not cure the prejudice (internal quotation marks and citation omitted)). Finally, we reject Defendant's argument that the jury's note asking whether it was to disregard the prosecutor's question showed that it "considered" or "deliberat[ed]" on Defendant's prior murder conviction. If anything, the note indicated that the jury was questioning

12

whether it *should* consider or deliberate on the issue, not that it actually had, and the jury was told to disregard the prosecutor's statement.

{21} Furthermore, Defendant admits he killed Victim and on appeal argues that "his defense was not that he didn't commit the act[,]" but that he was insane. Although we observe that our review entails considering, not whether he actually killed Victim, but whether the prosecutor's comment prejudiced his insanity defense, we fail to see how any error here amounted to fundamental error given our discussion above. Because Defendant admitted to killing Victim and concedes that "the case was close" on the insanity issue, we cannot say that this case presents an "extraordinary circumstance" whereby Defendant's conviction amounted to a "miscarriage of justice," *Silva*, 2008-NMSC-051, ¶ 13, or a "mistake in the process [made Defendant's] conviction fundamentally unfair," *Barber*, 2004-NMSC-019, ¶ 17, particularly given that the prosecutor's question was not outright prohibited by Rule 11-609.

{22} For the same reasons, we also hold that the district court did not commit fundamental error by failing to sua sponte declare a mistrial or offer additional curative instructions on its own motion. *See State v. Newman*, 1989-NMCA-086, ¶ 19, 109 N.M. 263, 784 P.2d 1006 ("A reviewing court will generally refuse to reverse a trial judge for failing to grant a mistrial sua sponte."); *see also State v. Gallegos*, 2009-NMSC-017, ¶¶ 26, 29, 146 N.M. 88, 206 P.3d 993 (declining to find fundamental error where a district court did not declare a mistrial on its own motion).

**{23}** Additionally, we reject any allegations of prosecutorial misconduct because, as noted, Rule 11-609 permits inquiry into a testifying defendant's prior felony convictions in order to attack the defendant's credibility, and it is the district court's responsibility to weigh whether any prejudicial impact warrants exclusion. Thus, the fact of the prior murder conviction was not on its face "inadmissible," as Defendant maintains, and the prosecutor's question did not amount to misconduct.

**{24}** Lastly, we acknowledge Defendant's argument that his rights to due process and a fair trial under the Federal and New Mexico Constitutions were violated by the prosecutor's question. But given that Defendant does not develop this argument, we decline to reach it because "[f]or this Court to rule on an inadequately briefed constitutional issue would essentially require us to do the work on behalf of Defendant[.]" *State v. Duttle*, 2017-NMCA-001, ¶ 34, 387 P.3d 885; *see also State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (noting that appellate courts are under no obligation to review unclear or undeveloped arguments).

**4. "Extraneous Evidence"**

**{25}** The next issue presented is whether a prosecutor's question to a witness during the ordinary trial process is "extraneous evidence." Such evidence refers to "extraneous information [that] reached the jury[.]" *State v. Doe*, 1984-NMCA-045, ¶ 15, 101 N.M. 363, 683 P.2d 45. However, "extraneous" information does not refer to arguably improper questions posed by counsel during trial. Rather, it refers to

14

material that reaches the jury outside the normal trial process. *See, e.g.*, *id.* ¶¶ 7, 14-15 (discussing whether information obtained by a juror during a trial recess prejudiced the defendant); *see also Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶¶ 10, 22-24, 146 N.M. 698, 213 P.3d 1127 (analyzing whether "extraneous evidence" reached a jury when a juror spoke to a mechanic shop owner about an automobile negligence case on which she was serving).

{26} Defendant argues that evidence of the prior murder conviction was "extraneous evidence." Defendant acknowledges the general rule that extraneous evidence "'does not refer to objectionable statements of counsel made during trial" but argues that this case presents a unique situation because the jury "sent out a note indicating that it was deliberating on the extraneous evidence[.]" We are not persuaded.

{27} As already noted, we do not consider the jury's question to the court an indication that it was "deliberating" on Defendant's prior murder conviction. But in any event, the prosecutor's question was not "extraneous evidence" because it was asked while Defendant was on the stand. This is not a situation where a juror brought in outside information, but rather, involved information that reached the jury during the normal trial process. Consequently, the prosecutor's question was not "extraneous evidence."

**The Phone Call**

**1. Foundation**

15

{28}     The next issue on appeal is whether admission of the 7:59 p.m. phone call recording lacked an adequate foundation. "[S]ufficiency of the foundation or authenticating evidence is a matter largely within the discretion of the [district] court[.]" *State ex rel. State Highway Dep't v. Kistler-Collister Co.*, 1975-NMSC-039, ¶ 16, 88 N.M. 221, 539 P.2d 611. "The [district] court abuses its discretion when it admits evidence for which the necessary foundation has not been laid." *State v. Onsurez*, 2002-NMCA-082, ¶ 8, 132 N.M. 485, 51 P.3d 528. A recording may be authenticated by witness testimony that identifies the recording as being what its proponent claims it to be. *See* Rule 11-901(A) NMRA ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

{29}     Defendant argues that the "admission of the recorded phone call allegedly made by Claudio Castaneda was made without an adequate foundation[.]" Defendant alleges that Castaneda was not sufficiently identified as having made the phone call. We disagree.

{30}     Before the jury heard the recording, DACDC's phone call custodian testified that each inmate has an identification number that is connected to an individualized PIN that inmates use to make phone calls. In addition, he testified that computerized call records establish the inmate PIN used to make the call, the duration of the call,

16

and the number called. The phone call custodian further testified that the call log record shows that the PIN used to make the 7:59 p.m. phone call belonged to Castaneda. Although he acknowledged that it is common practice for inmates to share their PIN numbers, there is no evidence or allegation that this occurred here, and notably, the caller was identified as "Claudio" twice during the phone call. Likewise, there is no evidence or allegation that the computerized call record system was inaccurate or mishandled. Accordingly, the district court did not abuse its discretion because the witness testimony sufficiently identified Castaneda as the caller.

**2.      Hearsay**

{31}     Next, we turn to whether admission of the phone call constituted inadmissible hearsay. Hearsay is an out-of-court statement by a declarant offered into evidence to prove the truth of the matter asserted. Rule 11-801(C) NMRA. "An out-of-court statement is inadmissible unless it is specifically excluded as non-hearsay under Rule 11-801(D) or falls within a recognized exception in the rules of evidence, or is otherwise made admissible by rule or statute." *State v. Bullcoming*, 2010-NMSC-007, ¶ 33, 147 N.M. 487, 226 P.3d 1 (internal quotation marks and citation omitted), *rev'd on other grounds by Bullcoming v. New Mexico*, 564 U.S. 647 (2011).

{32}     Relevant here is the present sense impression exception to the hearsay rule. Pursuant to Rule 11-803(1) NMRA, in order for a hearsay statement to be admissible

17

as a present sense impression, the statement must be one that "describes or explains the event or condition, and it must be made very close in time to the event that the statement describes. The judge must decide if the time element affects the statement's reliability and if there is any apparent motive to lie." *State v. Chavez*, 2008-NMCA-125, ¶ 9, 144 N.M. 849, 192 P.3d 1226. "We review the admission of evidence pursuant to an exception or an exclusion to the hearsay rule under an abuse of discretion standard." *State v. Largo*, 2012-NMSC-015, ¶ 22, 278 P.3d 532.

{33} Here, Castaneda refused to testify and, in lieu of his testimony, the State sought to admit the phone call recording under Rule 11-803(1). The district court allowed the recording to be admitted over Defendant's objection, finding that Castaneda was unavailable, and "the recording is a sufficient indicia of reliability to be admitted."

{34} On appeal, Defendant argues that the phone call was inadmissible hearsay and does not fall within the present sense impression exception. Specifically, Defendant contends that the call was made after the homicide, and the caller was merely describing being shown Victim's body sometime earlier. Defendant further argues that the caller "had the time to alter or misrepresent his perceptions." Because Defendant acknowledges that the caller's hearsay statements— "Dominic just killed somebody. . . . Slit his throat open and showed me everything"—explained what he had personally perceived, the only question on appeal is whether the statements were made

18

sufficiently close in time to when the caller perceived Victim's body. We conclude that the district court did not abuse its discretion in admitting the telephone call.

{35} A DACDC officer testified that he first observed Defendant covered in blood at approximately 8:00 p.m. The officer also testified that he had last seen Defendant without bloody clothes about thirty to forty minutes earlier. The phone call was made at 7:59 p.m. and the emergency response was initiated at 8:00 p.m., which means that the homicide occurred sometime between 7:19 p.m. and 7:59 p.m. During the phone call, the caller stated that the killing "just" happened and that prison was not locked down yet because "[t]hey're barely finding out." Towards the end of the phone call, the caller said, "the C.O.'s are coming now. . . . They told me to hang up, babe. I got to go. Okay." Based on these facts, we conclude that the district court could properly determine the phone call was made very close in time to the event that the statements describe. In addition, Defendant does not allege that Castaneda had any particular motive to alter or misrepresent his perception, and the district court explicitly determined that "the recording is a sufficient indicia of reliability to be admitted."

{36} Therefore, we hold that the district court did not abuse its discretion in admitting the phone call recording because the hearsay statements were made immediately after the caller perceived the event and condition, and the district court found that the statements were sufficiently reliable.

**3.      Confrontation Clause**

19

**{37}** The next question presented is whether Defendant's right to confront witnesses against him was violated by admission of the phone call recording. "Under the Confrontation Clause, U.S. Const. amend. VI, an out-of-court statement that is both testimonial and offered to prove the truth of the matter asserted may not be admitted unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *State v. Smith*, 2016-NMSC-007, ¶ 42, 367 P.3d 420 (internal quotation marks and citation omitted). A statement is testimonial when its "primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution." *State v. Navarette*, 2013-NMSC-003, ¶ 8, 294 P.3d 435 (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006). "Claimed violations of the Sixth Amendment right to confrontation are reviewed de novo." *State v. Tollardo*, 2012-NMSC-008, ¶ 15, 275 P.3d 110.

**{38}** Defendant argues on appeal that his right to confrontation was violated by the admission of the phone call. He specifically contends that it was "testimonial because it was made by an inmate who knew that the call was recorded and could have made it for the purpose of providing evidence." (Internal quotation marks and citation omitted.) For the following reasons, we are unpersuaded.

**{39}** There is no evidence that the caller "intend[ed] to establish some fact with the understanding that [the] statement may be used in a criminal prosecution." *Navarette*, 2013-NMSC-003, ¶ 8 (internal quotation marks and citation omitted). Defendant

20

merely posits the hypothetical that the call "*could have*" been made for use in a criminal prosecution but does not establish that was the caller's intent or primary purpose. *See, e.g.*, *State v. Imperial*, 2017-NMCA-040, ¶ 38, 392 P.3d 658 ("When the primary purpose of a statement is not to create a record for trial, the Confrontation Clause is not implicated." (internal quotation marks and citation omitted)), *cert. denied*, 2017-NMCERT-003, ___ P.3d ___. Moreover, Defendant alleges that the phone call "was a rushed attempt to record the caller's version of events" but cites no evidence in the record to support his argument. Nor does Defendant provide any support for the proposition that inmate phone calls are inherently testimonial simply because they are made with the knowledge that they are recorded. We conclude, therefore, admission of the phone call did not violate Defendant's confrontation rights because the statements made therein were not testimonial.

**Ineffective Assistance of Counsel**

{40} Defendant next argues that his trial counsel provided ineffective assistance of counsel by failing to request a mistrial or a curative instruction immediately after the prosecutor asked Defendant about his prior murder conviction. Defendant does not sufficiently develop this argument and concedes that habeas proceedings are a more appropriate venue for addressing ineffective assistance of counsel claims so that an evidentiary hearing can take place on the record. *See State v. Grogan*, 2007-NMSC-

21

039, ¶ 9, 142 N.M. 107, 163 P.3d 494. We instruct Defendant to petition for a writ of habeas corpus on his ineffective assistance of counsel claim if he is so inclined.

**CONCLUSION**

**{41}** Defendant's conviction is affirmed.

**{42}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**TIMOTHY L. GARCIA, Judge**